# HAWAIIAN TRUST COMPANY, LIMITED, ET AL., EXECUTOR, *v.* VON HOLT ET AL., TRUSTEES,[1]

## SAME *v.* SAME.

### APPEALS FROM THE SUPREME COURT OF THE TERRITORY OF HAWAII.

Nos. 106, 107.   Argued January 26, 1910.—Decided February 21, 1910.

A provision that a definite amount of net income be paid by trustees to the widow does not entitle her to income from the death of the testator, but only from after the executors have been discharged and the property turned over to the trustees.

This rule applies even if, after acceptance by the widow, of the provision in lieu of dower, it appears that the provision is not as advantageous to her as though she elected to take her dower.

In considering whether a provision in a will is as advantageous as dower interest, the fact that the widow is an executor and receives commissions may be considered.

18 Hawaii, 34, 342, affirmed.

THE facts are stated in the opinion.

*Mr. Aldis B. Browne,* with whom *Mr. Alexander Britton, Mr. Evans Browne, Mr. Sidney M. Ballou, Mr. Mason F Prosser, Mr. Robbins B. Anderson, Mr. F. E. Thompson* and *Mr. C. F. Clemons* were on the brief for appellants.

*Mr. E. M. Watson,* guardian *ad litem* and attorney for appellees, Kawananakoa heirs.

*Mr. W. L. Stanley, Mr. Henry Holmes* and *Mr. C. H. Olsen* for the trustees, appellees, submitted.

---

[1] Original docket titles, No. 106, Abigail K. Campbell Parker, Appellant, *v.* Abigail K. Campbell Parker and others, Trustees, etc.; No. 107, Same *v.* Same. On October 11, 1909, suggestion of death of appellant and substitution of Hawaiian Trust Company as appellant. January 24, 1910, suggestion of death of appellee and substitution of Hannah Martin Von Holt as trustee, appellee.

MR. JUSTICE HOLMES delivered the opinion of the court.

These are bills in equity, brought by the respondents, trustees under the will of James Campbell, for instructions as to the meaning of a clause in the will. James Campbell died on April 21, 1900, leaving large amounts of real and personal property. His will was proved on June 26, 1900. By it the same persons were made, first, executors, and afterwards trustees. On July 3, 1905, a decree of distribution was made discharging the executors and ordering them to turn the property over to themselves as trustees. The testator left a widow and children, and the question before the court is whether the widow, the appellant, is entitled to any part of the income from realty before the same came to the trustees' hands. The bill in No. 106 originally raised other questions, but the widow is the only appellant, and what we have stated is the single matter here. The Supreme Court decided against the appellant on the merits in 106, the principal case. 18 Hawaii, 34. The bill in 107 was filed after the decree in 106, on the notion that the decree did not fix the time when the widow's income from realty began. The Supreme Court regarded the matter as *res judicata*, but discussed the merits again, and then affirmed a decree dismissing the bill. 18 Hawaii, 342.

By the first clause of the will the executors were to reduce all the estate, real and personal, to possession, to collect the income thereof "pending the distribution thereof" as thereinafter provided and to have the value adjudged. By the second, they were to pay the debts and funeral expenses. By the third, there was given to the widow a sum of money equal to one-third of the value of the personal property only, adjudged as above, after payment of debts, etc. This sum was to be paid in cash, and if the condition of the estate should not warrant the payment of the whole at one time, then it was to be paid "as rapidly as the income and interests of my estate shall permit, without the sale of any real estate, or

the sacrifice of any personal property, as a means of raising such sum, but provided that the entire sum be paid within two years from the date of my decease, and no deferred payments shall, within said period of two years, draw any interest." The fourth clause gives the use and occupation of the testator's dwelling house and grounds, furniture, horses, carriages, etc., to the widow, and to the children so long as they remain unmarried, and the executors or trustees are to keep the house and grounds in suitable condition and repair at the charge of the estate; with further details. The fifth clause directs the executors to pay to the widow "for the use of herself and our children, as a family allowance, such sum, monthly," as may be decreed by the Probate Court, and the trustees after entering upon their functions are to make such further provision for the maintenance of the children as is thereinafter directed. By the sixth clause, after satisfying the second and third, the executors "shall, as soon as may be, conclude the probate proceedings hereunder, and obtain a decree of distribution of my estate," and the testator gives to the trustees and to those living and resident within the Hawaiian Islands at the date of such decree all the residue of the estate not before otherwise devised or bequeathed.

The trusts, so far as material, after a further provision in clause seven as to the house and grounds and their contents, are as follows: "Eighth. With respect to all property which shall be so distributed to them," except that mentioned in seven, the trustees are to reduce it to possession and manage it, paying charges and their own commissions. "And to collect all the rents, issues, profits, income and revenue thereof" . . . "and to invest and reinvest, and keep invested," and at will to change the investment of any and all moneys that shall come to their hands by virtue hereof" not otherwise specially disposed of, "and to segregate, and keep separate and apart, (during the life of my wife,) the accounts of and pertaining to the realty of my Estate from the accounts pertaining to any and all other thereof." "Ninth: And from

and out of the net income, rents, issues and profits of and
from the realty last aforesaid said Trustees shall . pay the .
equal One Third part or portion thereof, in semiannual or,
(at the discretion of said Trustees,) more frequent payments,
to my said wife, for and during the remainder of her natural
life." · *Habendum* to her absolutely. By the tenth clause the
remaining two-thirds of the net income "from said realty"
are given to the children with a proviso for their minority
and making surplus revenues capital. Finally the sixteenth
clause states that the provision made for the widow "is in-
tended, and shall be by her accepted, (if at all,) in lieu and
full satisfaction of her dower interest in my Estate."

It will be seen from the dates of the probate of the will,
June 26, 1900, and of the decree turning over the property
to the trustees, July 3, 1905, that probably a longer time was
· taken to finish the administration than the testator expected,
. and that if the widow did not have a right to her third of the
income from the real estate until in fact the estate went to
the trustees, she will lose a considerable sum that has accumu-
lated in the meantime. The loss is made the more aggravat-
ing that the estate seems to have been ready for distribution
on February 10, 1902. Nevertheless we think that any
doubts are artificial and agree with the Supreme Court of
Hawaii that the language of the will is too clear to admit any
interpretation but one. It is said that the provision is in lieu
of dower and that the will as construed leaves her worse off
than if there had been no will. Whether that would be so or
not, if we take into account that she is one of the executors
and trustees, getting her share of the commissions, we do not
know or think of much importance. The testator seems to
treat it as an open question whether she will accept the pro-
vision. However that may be, the words are explicit. ·The
eighth clause purports to deal only with the "property which
shall be so distributed to them." That phrase dominates
the whole clause. It is the rents "thereof" that they are to
collect, as by clause one the executors were to collect all in-

come before distribution; the accounts pertaining to the realty, that is the realty so distributed to them, are to be kept separate, and the ninth clause gives the widow one-third of the income of "the realty last aforesaid." It is argued that under the earlier clauses the realty and accrued income would be kept intact and that it is reasonable to suppose that the testator meant his wife to have one-third of the income of the land as she had one-third of the personalty. It might be reasonable to suppose so if the testator had not declared in terms what he meant. What he gave was not one-third of the income [of the realty] generally, as in *Lovering* v. *Minot,* 9 Cush. 151, and as it was taken to be by the probate judge, but one-third of the income of the realty 'last aforesaid,' that is, the realty distributed to the trustees. It was one-third of the income of the realty in the hands of the trustees, the income collected by them from it, and of which they were to keep a separate account. Perhaps the testator thought that the family allowance provided in clause five would be a sufficient substitute during the relatively short time for which he thought that the administration would last. Perhaps he did not think of the event that has happened at all. It would seem that the widow had herself partly to blame for the delay between February 10, 1902, and July 3, 1905, as she was an executrix and trustee. At all events we are of opinion that she took no income from real estate, *eo nomine,* before July 3, 1905, and did take her share from that date.

*Decrees affirmed.*