WILLIAM NELSON CROMWELL ET AL., TRUSTEES, *vs.* EDMUND C. CONVERSE, 3D, ET ALS.

Third Judicial District, New Haven, June Term, 1928.

WHEELER, C. J., MALTBIE, HINMAN, BANKS AND YEOMANS, JS.

Argued June 6th—decided September 28th, 1928.

ARTICLE SEVENTEENTH: All the rest, residue and remainder of my estate, real and personal, whatsoever and wheresoever situate, whereof I may be seized or possessed or to which I may be in any manner entitled at the time of my death, or over which I may have any power of disposition, including therein the amount or subject of any legacies or devises hereinbefore given which may for any reason lapse or fail, I do give, devise and bequeath unto my executors hereinafter named, the survivor and survivors of them and their respective successors, to have and to hold the same for and during the life of my descendants who shall be living at the time of my death and of the last survivor of them, in trust, nevertheless, for and upon the uses and trusts following, that is to say:

I. To invest the same and keep the same invested in the manner hereinafter provided, and to recover and receive the income and revenue thereof.

II. To divide the net income and revenue thereof, after deducting all expenses of administration and their lawful commissions thereon, into three equal shares, one such equal share with respect to each of my three children, Katherine Converse Strong, Antoinette Countess Von Wartensleben and Edmund C. Converse, Jr., and their respective issue.

III. To pay over and apply one of said equal third shares of said net income to the maintenance of each of my said children and his or her issue, as follows:

One equal half of each of said shares shall be applied to the maintenance and support of that one of my said children me surviving in respect of whom said share is set apart. With respect, however, to my daughter, Antoinette, now the Countess Von Wartensleben, and to my son, Edmund C. Converse, Jr., it is my desire that my executors and trustees shall pay over to the said Antoinette and to the said Edmund, in quarter-yearly installments, so much of such income and only so much thereof as my said executors and trustees in their absolute discretion may think necessary and desirable for the proper maintenance and support of the said Antoinette and the said Edmund respectively, the balance, if any, to be paid to the children and the issue of deceased children of the said Antoinette

and the said Edmund in equal shares, per stirpes and not per capita; and

The other equal half of each of said shares shall be applied to the maintenance and support of the children and of the issue of deceased children of the said Katherine, Antoinette and Edmund respectively in equal shares, per stirpes and not per capita.

ARTICLE SECOND: I give, devise and bequeath unto my executors named in my last will and testament, whom I constitute as trustees for the purpose, the sum of one million dollars ($1,000,000) in trust, nevertheless, for and upon the uses and trusts following; to hold and invest the same and keep the same invested in the manner provided in said will and to recover and receive the income and revenue thereof and to pay over and apply the net income and revenue thereof to the maintenance and support of my son, Edmund C. Converse, Jr., and of his children in such manner, proportion and

amounts as my executors and trustees in their absolute and uncontrolled discretion shall deem fit during the term of the natural life of my said son. Upon the death of my said son I direct that the said trust fund be divided into equal shares as follows: one in respect of each of the lawful children of my said son who shall be then living, and one in respect of each such child who not being then living shall have left lawful issue then living; and I do give and bequeath one of said equal shares to the lawful issue then living of each child of my said son who shall not be then living, share and share alike, per stirpes and not per capita, absolutely to him or her and his or her heirs forever.

One of said equal shares I do give and bequeath unto each child of my said son then living who shall have attained the age of thirty years, absolutely to him or her and to his or her heirs forever.

And I direct that my said trustees continue to hold, invest and reinvest one of said equal shares in respect of each lawful child of my said son then living who shall not then have attained the age of thirty years, and to recover and receive the income and revenue thereof and to pay over and apply so much of the net income and revenue thereof as they shall think fit, to his or her education, maintenance and support until he or she shall have attained the age of thirty years and thereupon to pay over the principal of said share, together with any accumulations thereon unto him or her, and I do thereupon give and bequeath the same to him or her absolutely and his or her heirs forever.

If any child of my said son for whom one of said shares shall be held in trust, as hereinbefore provided, shall die before attaining the age of thirty years, then upon his or her death I give and bequeath the principal of the share so held in trust, with all accumulations of income thereon, to his or her lawful issue him or her surviving, share and share alike, per stirpes and not per capita, but if there shall be no lawful issue of such child him or her surviving, then I give and bequeath said principal and accumulation unto the other lawful issue of my said son then living, absolutely, share and share alike, per stirpes and not per capita,

*Walter N. Maguire,* for the plaintiffs.

*David S. Day,* for the defendants A. L. Shively and Estella Converse, executors.

*Mark W. Norman,* for the defendant Roger A. Converse.

WHEELER, C. J. The testator gave no part of the principal of his residuary estate to any beneficiary until his last descendant living at his death deceased. His undoubted purpose in deferring the vesting of the principal to the latest possible day within the rule against perpetuities was to maintain control over the principal as long as he legally could, through trustees named by himself. The residuary article, quoted in the footnote, does not indicate, by express provision, an intention on the part of the testator to accumulate the income of the residuary trust fund, or that of the trust fund under the codicil, quoted in the footnote, except as to the payments of income to beneficiaries until attainment of thirty years of age. The testator gave the residue of his estate to his executors in trust to invest and receive the income thereof and divide the net income into three equal shares, one such equal share to each of his children and their issue, and to pay over and apply one of the shares of the net income to the maintenance of each of his children and their issue in a specified manner. As to his daughter Antoinette and his son, Edmund C. Converse, Jr., he specifies, (a) it is my desire that my executors and trustees shall pay over to them in quarter-yearly instalments, (b) so much of such income as in their absolute discretion they may think necessary and desirable for the proper maintenance and support of the son and daughter, (c) and the balance, if any, to be paid to their children and the issue of deceased children in equal shares per stirpes. The purpose of the testator was apparent, to provide in the hands and under the management of trustees, a fund whose income should provide maintenance and support for

these children, the determination of which and the amount of payments for which, should be in the absolute discretion of the trustees and thus the fund be placed beyond the reach of creditors of the son and daughter. This residuary provision created a spendthrift trust whose terms were brought expressly within those of General Statutes, §§5872-5875; *Carter* v. *Brownell,* 95 Conn. 216, 111 Atl. 182. It created an equitable estate for the maintenance of the son and daughter which was unalienable by them and removed from the demands of their creditors. No construction of this article by itself, or in connection with other articles of the will, can be permitted to override the purpose of this spendthrift trust.

The provisions of the trust are not obscure. The determination by these trustees of the amount of the income necessary and desirable for the proper maintenance and support of these children is within their absolute discretion. Their determination must stand unless there be a clear abuse of discretion. The times of payment are likewise defined.

One contingency was not specifically provided for. Edmund C. Converse, Jr., died on November 2d, 1926, and not on a quarter-yearly day; between the last quarter day payment and November 2d, income had accrued and no specific provision was made for this contingency. It is the contention in behalf of Roger Converse that the discretion of the trustees in determining the amount necessary and desirable for the maintenance and support of these children of the testator can only be exercised on each of these quarter-yearly days, and that the trustees had no power in advance of these designated days to set aside income for them, and thus render it subject to garnishment by their creditors. The contention in behalf of the estate of Edmund C. Converse, Jr., is that the trustees

possessed the power to make an apportionment of the income of the residuary trust which had accrued prior to his death and apply the same to his maintenance and support by payment to his estate, or otherwise. As we view it, the case does not call for a decision of this broad proposition. Nor does a holding apportioning this income to these executors require a holding that the trustees possessed the power to pay to these children, or set aside for them, income in advance of the times of payment as provided by the testator. No power could be exercised by the trustees which would vest title to this income in these *cestuis que trustent,* for that would, as counsel insist, subject the income so set aside to garnishment. The argument of both defendants somewhat assumes that the determination of the discretion, as to maintenance, and the act of payment, are part of the same process. On the contrary, while these may be coincident, they are in truth wholly separable.

What must the trustees do in determining what part of the income is necessary and desirable for the maintenance and support of Edmund C. Converse, Jr.? Maintenance and support, as counsel say, are not words of art but have a relative meaning, which, in these provisions of the will under our immediate consideration, is revealed in the testator's intention and in the circumstances surrounding him and his son. It is quite obvious they are not here used in a restricted sense, nor are they to be measured by any fixed standards. The testator possessed large means, his children had been reared in luxurious living and were accustomed to its uses. What was suitable for his son's situation and station in life is that which those possessed of great wealth and social position customarily adopt for their scale of living in these modern times. Unquestionably the testator had this in mind

and understood its significant necessities in providing
for his son's income. The funds which he placed in
trust to provide an income for him were in size re-
sponsive to the considerations which we have sug-
gested. They contemplated every expenditure neces-
sary or incidental to the maintenance of his son and
his family in the luxury accompanying one in his
station in life. The terms of the residuary article
plainly give to these trustees the power to pay over
to the son the entire net income from these trusts if
they decide this course to be necessary and desirable
for the son's maintenance and support. The pro-
visions of the residuary article and of the specific
trust fund reveal the testator's desire that his son
should receive the entire income from these trust funds
if necessary and desirable for his maintenance and
support. True, the trustees may in their discretion
limit the expenditures for maintenance, but the testa-
tor's primary purpose was not to restrict the amount
of the income for his son's maintenance but to make
the fund invulnerable to the attack of his creditors.
He provides for the disposition of the balance of these
funds, if any, to the children of his son. It was a
precautionary provision, supplementary to the main
purpose of the spendthrift trust. It was not for the
purpose of adding to the generous provision he had
already made for them. We are seeking now for the
testator's intention. In the will and in these sur-
rounding circumstances we see the testator's under-
standing and purpose to have been that the trustees
would ordinarily pay over to his son the whole of the
net income.

It is also clear that the testator intended to provide
maintenance and support for his son throughout his
life, as the testator also did for every living descendant
of his throughout their lives, to the last living sur-

vivor of them. It is inconceivable that the testator intended his son to be without income for his maintenance and support for any period of his life. He knew, as all know, that expenditures for one in his son's station in life could not in all instances be paid from day to day, week to week, or even month to month. He knew that obligations accrue in one period and may be payable at a later period. He may have contemplated that bills of his son's contracting might be allowed to stand, and that his income might be exceeded. If his son should die at any time within the period between payments he knew that obligations of his contracting would be liable to be outstanding, but that the income earned upon the trusts and in the hands of the trustees for the purpose of providing for the son's maintenance and support would, if applied to the payment of the outstanding accounts, probably liquidate them. It is not possible that the testator contemplated his son's dying in debt and his estate unable to pay debts while the income from these trusts for his maintenance, which had accrued prior to his death, could not be used for the purpose of paying the debts, but must vest in the children of his son who had been already abundantly provided for by the testator. The testator could not have anticipated, in the light of this record, that his son would have saved sufficient from his income so that his estate could meet all his obligations. We should not lightly assume that the scrivener of this will, skilled in testamentary law as the will discloses, intended to leave the son in such a situation, or inadvertently failed to provide against this contingency. We should not, unless the terms of the will clearly compel it, construe the residuary clause in such way as to be at variance with the testator's intention. We shall not discuss, much less controvert, the contention made in behalf of Roger Converse that

the discretion of the trustees in determining what amount of the income should be appropriated for the maintenance and support of the son must have been exercised prior to his death, since it is not necessarily involved in the case, if our viewpoint is sound. In considering the decision reached by the trustees upon what amount of income was suitable for the maintenance of Edmund C. Converse, Jr., the relation existing between the testator and these trustees must not be forgotten. They had the advantage of an intimate relationship with him. They knew the surrounding circumstances and they knew the contents of the will. It was their duty as trustees to familiarize themselves with the entire situation so that they might exercise their discretion wisely, and carry out the provisions of the testator's will, and act justly toward his son. We must assume they exercised that discretion properly. There is no suggestion in the record of any complaint or criticism of any of their acts, from any source, at any time.

In the agreed facts we find this statement of the decision which the trustees reached: The trustees decided at the beginning of the administration of the trust to pay to Edmund C. Converse, Jr., all of the net income from the specific trust under the codicil for his maintenance, and one half of the net income of one third of the residuary estate for his maintenance and support, and they have never altered the exercise of this discretion, and the accounts have been regularly kept in accordance with this state of facts. Such was the determination of their discretion by the trustees. Is it not an all but inevitable inference that they acted upon their own good judgment after careful investigation, and also in the knowledge that they were carrying out the intention and purpose of the testator? The only substantial difference between

the two trusts is that the trustees were authorized by the residuary article in their discretion to pay over and apply the income quarterly to the maintenance of the son, while in the specific trust under the codicil they were in their discretion to pay over and apply the net income for the son's maintenance in such manner, proportion and amounts as they deemed fit, which meant at such times as they saw fit. The argument in behalf of Roger Converse imposes upon the trustees the burden of exercising this discretion as to the maintenance each time a quarterly payment was made under the residuary article, and each time a payment was made under the specific trust. It is at this point that we think his argument fails. Is it reasonable to suppose that the testator intended that these trustees at the time they made each payment should make, prior to or at the very time of the payment, a new determination of what amount was then necessary and reasonable for the maintenance and support of the son? The testator was a man of wide business experience; for ten years he was president of The Bankers Trust Company and had served as its director and member of its executive committee from 1903 to his death. He would have known that it would impose an impracticable and unnecessary burden upon these trustees to require them to make a fresh determination of a situation, such as this, with every payment made; and we too realize this. A family does not vary its scale of living with such frequency as to often require a determination of the amount proper for its maintenance and support. To subject the son to constant variableness in the scale of his living by constant changes in the income paid would subject him to continuing annoyance and prevent him from establishing his standard of living upon a uniform income received. When the situation in the son's life had changed so

as to make the need of a change in the decision already made, then and only then would it become the duty of the trustees to exercise the discretion vested in them and make a new decision based upon the changed conditions. The record contains no trace of a suggestion of change in circumstances. These trustees cannot be assumed, by any court, to have failed in their duty as trustees until the facts of record exhibit this. So long as the decision of the trustees stood, it applied to all income received by them under these trusts; the decision was that all of it was necessary and desirable for the maintenance and support of the son. If it were true that the determination of the trustees must be made at or prior to the time each payment was made, upon the stipulated facts it must be held that this has been done. Every payment made by the trustees was a reaffirmation by them of the determination theretofore made. It was as definite as if the trustees had said at the time of payment, we pay this in pursuance of the decision reached by us at the beginning of our administration of these trusts that all of the net income from these trusts is required for the maintenance and support of Edmund C. Converse, Jr. Pursuant to their decision the trustees opened books for these trusts and set up an income account for the son and all income received under these trusts has been regularly credited to him.

It is emphatically urged in behalf of Roger Converse that these accounts cannot vest in Edmund C. Converse, Jr., the title to the net sums credited to him; that is quite true. That cannot result, else it would defeat these spendthrift trusts. That is not the purpose of these accounts. They do not assume to vest title to the income credited in the son. Their significance in this discussion centers in the fact that the accounts represent the items of income which the de-

cision of the trustees has set apart for the maintenance
and support of the son. Every credit made upon these
accounts was a reaffirmation of this decision of the
trustees. The income so credited was still in the
hands of the trustees and under their control. They
could have changed their decision, in the lifetime of
Edmund C. Converse, Jr., but until they had done so
the net income was set apart in evidence of their de-
cision that it was for the maintenance and support
of the son. The act of paying it over quarterly under
the residuary trust, or under the specific trust, was a
mere manual act, requiring no discretion. That had
been exercised in the making of the decision by the
trustees. The argument in behalf of Roger Converse
assumes that the income which has been accumulated
in these trusts and been set apart and devoted by
the trustees to the maintenance and support of
Edmund C. Converse, Jr., cannot be paid to his estate
since he was the only person to whom it could be paid.
The payments were incidental to the main purpose
which was the decision of the trustees. Let it be sup-
posed the trustees had made their decision but de-
layed, in the case of the specific fund, turning over
the income so appropriated in their hands to the use
of the son for a period of six months prior to his de-
cease, could it be reasonably held that the trustees
were without power to pay over this income, devoted
as it had been to the use of the son for the purposes
specified under the will, to his estate? Or did the son's
decease annul the decision of the trustees made as to
all the income which had accrued prior to his decease?
The testator intended to provide for his son's main-
tenance until his decease. He had placed these trusts
in the hands of trustees and given them authority to
determine what amount of their income should be paid
to his son. They made the decision and set apart all

of the income for the son. Nothing remained but to pay it over to the son. There can be little or no question as to the testator's intention. That will be best carried out if the net income accruing prior to the decease of Edmund C. Converse, Jr., is apportioned and paid over by the trustees to his estate. The determination by the trustees that the income so set apart should be paid to Edmund C. Converse, Jr., was revocable in his lifetime but became irrevocable upon his decease.

Schouler on Wills, 6th Ed., Vol. 2, §1296, states the rule to be: "Where income was devised to A to be paid to him quarterly and he died before the first payment became due, but after the testator died his interest vested and his estate was entitled to the income until his death." See also *Union Safe Deposit & Trust Co.* v. *Dudley,* 104 Me. 297, 72 Atl. 166; *Welch* v. *Apthorp,* 203 Mass. 249, 89 N. E. 432.

The final question has to do with income which came from The Stanwich Corporation, of whose stock the estate of the testator owns all save a few qualifying shares. The income in question was declared and paid to the executors nearly two months after the decease of Edmund C. Converse, Jr. His executors now claim a share in the net income as a part of the residuary article upon the theory of the identity of this corporation with the estate of Edmund C. Converse. In no event could his estate have a claim against this corporation capable of enforcement until the dividend was declared.

Further, the receipts of income which came into the possession of the executors of the testator prior to November 2d, 1926, the date of the death of Edmund C. Converse, Jr., were less than the payments made for expenses chargeable to income prior to that date. So that at the time of his death there was no

net income in the hands of the executors to which he or his estate could have any possible claim. This disposes of this question. There is no occasion for considering whether there could ever be an identity between this estate and this corporation. If any such fiction could ever be recognized between two such persons, the facts present in this case could not make the fiction applicable. In what we have said or left unsaid, we must not be understood to countenance, in any respect, the practice which these trustees have exercised of using The Stanwich Corporation as a holding company for the purpose of carrying on business which properly belongs to the trustees or executors to carry on. Neither the practice nor the acts under the practice are before us for decision; lest, however, trustees and executors may infer by our silence that we recognize the practice adopted by these trustees, we are led to say, that we do not know of the existence of such a practice in this jurisdiction, nor have we been able to see its justification or necessity in the administration of an executor or trustee, and we gravely fear that it could not stand the test of judicial inquiry.

We answer:

Question 1. The net amount of $18,990.11 of the undistributed and accrued income as at November 2d, 1926, in the trust for Edmund C. Converse, Jr., under the Seventeenth Article of the will remaining after charging thereto its proportionate share of the emergency expenses set out in paragraph 11 of the finding should be paid by the trustees to the defendants A. L. Shively and Estella Converse, as executors of the will of Edmund C. Converse, Jr.

Question 2. The net amount of $17,099.62 of the undistributed income as at November 2d, 1926, in the trust for Edmund C. Converse, Jr., under the Second Article of the codicil remaining after charging thereto

its proportionate share of the emergency expenses set out in paragraph 11 of the finding should be paid by the trustees to the defendants A. L. Shively and Estella Converse, as executors of the will of Edmund C. Converse, Jr.

Question 3 is not in proper form to be answered.

The defendant executors have no interest in the matter referred to in paragraph 11 of the complaint.

In this opinion HINMAN, BANKS and YEOMANS, Js., concurred.

MALTBIE, J. (dissenting). With most of the reasoning of the majority opinion I am in entire accord, but I cannot accept the result it reaches. The trustees did not have to come to a new decision each time a payment was to be made as to the amount to be paid to Edmund C. Converse, Jr., but once having determined that the whole income should be paid to him, payments might thereafter be made in pursuance of that decision as a matter of course. Still that did not vest title to any of the income in him, but their decision might be changed at any time and the matter only became settled, title only vested in him, when the payments were actually made. It was of the very essence of the situation that the trustees retain control of the income, and he had no right to any of it until it was actually paid to him. How then can his estate, after his death, have such a right? Those who gave him credit could only rely upon an expectation that the money would be forthcoming, not upon a right to its payment; if the bills which he contracted were such that they did not properly pertain to his reasonable support and maintenance the trustees had power to withhold the payment; but if after his death the estate is entitled to the money as of right, creditors

holding such claims, if there be such, cannot be prevented from receiving their proportionate share of it —a result which would hardly accord with the purpose of the provisions in question. I would agree that, despite his death, the trustees may still in their discretion pay to his estate the income which had accrued at that time; but that, by reason of his death, they lost their control over it, and it forthwith became an asset of his estate, I cannot agree.