On January 21st, 1920, the late Isaac Guggenheim executed a trust indenture, appointing as trustees thereunder the Commercial Trust Company (hereinafter referred to as the corporate trustee) and George I. Mason (hereinafter referred to as the individual trustee) to whom he, by the first paragraph thereof, left considerable property with a direction:
"* * * to pay the net income thereof to the wife of the settlor, Carrie Guggenheim, in quarterly installments, payable respectively on the first day of January, April, July and October in each and every year for and during the life of said Carrie Guggenheim; and *Page 173 
upon the death of the said Carrie Guggenheim, in the event that she is survived by the settlor, to pay such income to the settlor for and during his life; and upon the death of the said Carrie Guggenheim, or, upon the death of the settlor in the event that she is survived by the settlor, to divide the said trust fund and all the property and money or securities then comprising the same, together with all accumulations thereon and all income, gains and profits thereof in the hands of the trustees, into such number of equal parts or portions as shall equal the number of daughters of the settlor who shall then be living and of such daughters who shall then be dead * * * and to pay over, assign, transfer, convey, surrender and deliver one such equal part or portion to each of the daughters of the settlor who shall then be living, absolutely and free of all restrictions."
The settlor's widow, Carrie Guggenheim, having died on January 5th, 1933, the trustees have filed their account and now seek the instructions and direction of this court with respect to the proper distribution of a fund of $27,365.26, while the individual trustee at the same time also asks for compensation or commission upon the corpus of the trust.
The fund in question represents income accrued, but not paid, prior to the decease of the life tenant, as well as income accruing between January 1st, 1933, the date of the last payment to her, and January 5th, 1933, the date of her death. The contest over this fund is between the ultimate remaindermen under the trust and the executors under the last will and testament of the life tenant, Carrie Guggenheim, deceased, each of whom claim the whole amount thereof.
It has long since been held by this court, that equity, as a general rule, will apportion income upon a trust, awarding that accrued prior to the life tenant's death to his or her estate and that accrued after such death to the remaindermen under the trust (Lang v. Lang's Executor, 57 N.J. Eq. 325; Day v. Faulks,79 N.J. Eq. 66; McCracken v. Gulick, 92 N.J. Eq. 214), and this even though, as here, the income is, by the provisions of the trust indenture, made payable at fixed periods or intervals.Lewis v. Towar, 45 Atl. Rep. 999, and cases therein cited. But, where the language employed in creating the trust discloses an intention on the settlor's part to make a different disposition, then that intention, as gathered from the express terms of the trust instrument, and *Page 174 
not the general rules of practice, must control the disposition of the interest, income and profits arising from the trust property.
It is here contended on behalf of the remaindermen that the settlor's intention, as gleaned from the words "together withall accumulations thereon and all income, * * * thereof," was that all income accrued, but not paid, at the time of Carrie Guggenheim's death, thereupon passed and became payable to them.
The italicized words, supra, however, have of themselves acquired no inflexible significance, nor have they become words of property with a fixed or technical definition. On the contrary, their meaning and interpretation in a trust deed must be gathered from the instrument at large. Lippincott v.Ridgeway, 11 N.J. Eq. 526, wherein Chancellor Williamson pointed out and held that the words "accumulated interest," have no technical or fixed legal meaning.
Nor can it be definitely said that the settlor, having employed the words "together with accumulations thereon," thereby indicated that he meant or intended that income earned, but not paid, prior to the death of his wife, Carrie, should, upon her decease, be paid not to her estate but to the remaindermen under the trust. Hagedorn v. Arens, 106 N.J. Eq. 377. These words cannot be wrested out of their context and their definition, as thus isolated, seized upon as the sole and controlling indicant of the settlor's intention, which only can be ascertained and determined from the trust instrument at large.
Having in mind that the settlor in the first instance had the right to dispose, as he pleased, of the trust fund as well as of all the interest and income thereof and accumulations thereon, the inquiry, of necessity, resolves itself into this: Did he by the provisions of the trust indenture make any disposition of income accrued, but not paid, during the life of the life tenant, and of income accruing between the date of the last payment to her and the time of her death?
By the first paragraph of the trust indenture, supra, the net income of the trust for and during the life of the settlor's *Page 175 
wife, was given to her, absolutely and unqualifiedly, and its payment to her specifically enjoined upon the trustees. That income was set aside as and became her absolute property. She could not legally be deprived of any part of it by and act, design or default on the part of the trustees. Nor could the trustees, by merely neglecting or refusing to pay it to her in the manner directed by the settlor, convert all or any part of it into corpus or accumulations thereon, payable, upon her death, to the remaindermen under the trust.
To hold otherwise, and as contended for by the remaindermen — that income accrued, but not actually paid over, during the life of the life tenant reverted upon her death to the remaindermen as accumulations on corpus — would necessitate a construction whereby this outright gift to the settlor's wife would be qualified so as to include not that which he had specifically directed the trustees to pay her, but only that which they saw fit to actually pay her, during her lifetime. It would require that settlor's clear and unambiguous language be judicially supplemented by words which he saw fit to exclude or omit therefrom.
The inevitable result and effect of any such construction would be to enable the trustees by their mere withholding, intentionally or otherwise, payment of all or any part of the net income until after the life beneficiary's death to thereby not only deprive the latter of that which the creator of the trust intended and specifically directed should absolutely be hers, but to even frustrate and defeat his very intent. A construction so harsh and casting such grave doubts upon the stability and security of trust settlements, and incidentally upon the settlor's power to dispose, as he sees fit, of that which is his own, should not, and will not, be adopted unless the language and tenure of the trust indenture admits of no other.
The words "all accumulations thereon" unquestionably mean something and clearly may be given effect without resorting to any such harsh, unreasonable and forced construction, as contended for on behalf of the remaindermen. By these words, the settlor unquestionably meant and intended *Page 176 
only such income as had not already otherwise been disposed of by him, namely that accruing or accrued between the time of his wife's death and the final distribution of the trust estate. Under no circumstances can it reasonably be said that he thereby meant or intended income earned or accrued during his wife's lifetime, a disposition of which he had already made by his specific direction that such be paid to her.
The remaindermen further insist that in having used the words "together with all accumulations thereon and all income * * * thereof, in the hands of the trustees" in directing the distribution of the trust estate, the settlor thereby indicated his intent that any funds in the trustees' hands at the termination of the life tenancy should go to them, and by reason of which they assert they are entitled to the fund in question. The fallacy of this argument, however, demonstrates itself in the fact that the settlor thereby unquestionably had reference to and intended only such funds as were in the trustee's hands at the time of his wife's death and of which he had not previously otherwise disposed. By no stretch of the imagination can it be said that the settlor thereby intended to impliedly countermand a specific disposition and to effect a redisposition of money which he had already disposed of and given outright to his wife, and which in accordance with his specific directions, should have been paid out to her and, therefore, not have then been in their hands.
I am fully convinced that the settlor, by the trust indenture, gave the entire net income of the trust for and during his wife's life to her, absolutely, and not merely such part thereof as the trustees saw fit to, or actually did, pay over to her during her lifetime. I am also fully satisfied that the settlor by the words "all accumulations thereon; all income * * * in the hands of the trustees," in directing the distribution of the trust estate, meant and intended not income accrued, but unpaid, during the life of his wife, but income accrued or accruing between the death of his wife and the actual distribution of the trust estate amongst those entitled *Page 177 
thereto and with respect to which income he had not made any other disposition by the trust instrument.
The trustees will be instructed and directed to pay over to the executors of the last will and testament of Carrie Guggenheim, deceased, that portion or part of the fund in question which represents income accrued during her lifetime, but not yet paid.
Turning now to the individual trustee's application for additional compensation or commission on the corpus.
By the eleventh paragraph of the trust indenture, the corporate trustee's compensation was thus fixed:
"The corporate trustee shall be entitled to receive as compensation for its service in the administration of this trust, a commission of one-half (1/2) of one (1) per centum per annum upon all income reserved under the trust, or a minimum commission of Five Hundred Dollars ($500.00) per annum, and is hereby authorized to deduct such commission from the said income. Upon the termination of the trust, the corporate trustee shall be entitled to no further commission than herein first specified."
By that same paragraph, however, the individual trustee's compensation was fixed in this manner:
"The individual trustee shall be entitled to receive as compensation for his services at the rate of Five Hundred Dollars ($500.00) per annum, payable in semi-annual installments on the first day of January and July in each year, while acting as trustee hereunder, and the corporate trustee is hereby authorized to deduct such commission from the said income."
Both trustees entered upon the administration of the trust and have satisfactorily discharged their respective duties as such. The remaindermen, however, resist the individual trustee's application for compensation upon the corpus of the trust upon the strength of the well settled rule that when the trust instrument fixes the trustee's compensation, it will be binding upon and control the court. Ladd v. Pigott, 215 Mo. 361;Southern Railway Co. v. Glenn, 98 W. Va. 309; 2 Perry Trusts §919; Matter of Hopkins, 32 Hun. 618; affirmed, 98 N.Y. 636; Inre Williams, 170 N.Y. Supp. 80; Randall v. Gray, 80 N.J. Eq. 13; Middleton v. Carter, 73 N.J. Eq. 624. *Page 178 
Against a principle so fundamentally sound, there is, and can be, no question raised. But that principle is wholly inapplicable where, as here, the trust is entirely silent as to compensation upon the corpus of the trust. In those cases, as in the one at bar, the intention of the parties, as gathered and ascertained from the language of the whole instrument, will be given effect and control. While conceding the soundness of this principle, the remaindermen insist that that intention — as indicated by his use of the words "shall be entitled to receive as compensation for his services * * *" was that the individual trustee should not receive any compensation upon the corpus of the trust, basing their insistence upon the argument that his compensation as thus fixed means full compensation for all services, notwithstanding the omission of the italicized adjectives, citing The American Law Institute's Restatement of the Law of Agency §443, and 13 Corp. Jur. 585.
It is further insisted on behalf of the remaindermen that since the trust instrument fixed the compensation of the individual trustee at a specified annual sum and that of the corporate trustee at a specified percentage of the income, the compensation thus fixed was in full of all services of the former but not of the latter, thus necessitating the settlor's use of the language "upon the termination of the trust shall be entitled to no other or further commission" in connection with the corporate trustee's compensation and not in connection with that of the individual trustee. However, the fallacy of this contention lies in the fact that it assumes a distinction which neither exists in law nor fact, because where an instrument fixed compensation for services, whether such be a specified sum or a percentage, that compensation will be deemed in full of all the services to which it relates. The American Law Institute's Restatement ofthe Law of Agency; Corp. Jur., supra.
The words, "as compensation for services," however, when read in the light of, and not as wrested from, their context clearly indicated their having been used by the settlor in regard to those services which the individual trustee might *Page 179 
render during the active life, and not upon or after the termination of the trust which he created. That he had in mind the performance of two different kinds of services by the trustees — those performed in the active administration of the trust and those performed upon or after the termination of the trust in properly winding it up — is clearly indicated by the fact that as to the corporate trustee, he specifically provided that it "upon the termination of the trust shall be entitled to no other or further commission" for the services which it may thereafter render in connection with its final settlement.
Nor am I able to agree with the contention that the individual trustee should be denied compensation upon the corpus merely because he, during the life of the trust, received the fixed annual compensation on income without protest. With that he was, and still is, satisfied; hence there was no need nor reason for his having protested. His right to compensation upon corpus, however, could only be asserted when it matured, upon the termination of the trust, which he did. Not until then was any objection raised to his thus asserted right, consequently there was neither reason nor occasion to his objecting or protesting before then.
Possessed of great means, wide experience, keen foresight and the benefits of the skillful and competent legal advice which he undoubtedly procured in connection with formulating and drafting this and other trust indentures, the settlor unquestionably was familiar with the nature, character and effect of trust instruments. That he, at the time of drafting and executing the trust instrument here involved, was aware of the likelihood of the trustees being allowed compensation upon the corpus by implication, intendment or otherwise, is powerfully manifested in the fact that he took definite and positive precautions to guard against any such contingency in so far as the corporate trustee was concerned. In full accord with his undeniable intention that it should receive no compensation upon the corpus, he provided in clear and unmistakable language that "upon the termination of the trust" it "should be entitled to no other or further compensation." *Page 180 
Had he also intended that the individual trustee should not be entitled to compensation upon the corpus, then he certainly would have used equally clear and unmistakable language as to him. The fact that he didn't do so, but deliberately saw fit to entirely omit such or similar language when dealing with the individual trustee's compensation, furnishes, to my mind, potent and cogent evidence that he didn't intend to deny or deprive him of that additional compensation. His purpose in not foreclosing the individual trustee from receiving a commission upon thecorpus, it not unreasonably suggests itself, might well have been his desire and intent to thus enable the latter to eventually be adequately compensated upon the termination of the trust for the risk and responsibilities assumed as well as the services entailed in administering so large and varied a trust estate.
The evidence fully satisfies me and constrains me to the view that the settlor's intention was to allow, and not deny, the individual trustee a commission upon the corpus of the trust. The amount of this commission should and must be dependent upon and commensurate with the risk and responsibilities to which he was held accountable, as well as with the character and extent of the services performed, in administering so large and varied estate; not overlooking, however, the fact that he had the aid and assistance of the corporate trustee in connection therewith.
Giving due consideration to all of the foregoing and the aggregate amount of compensation which he has already received on income, I do not believe that an additional allowance of two per centum upon the corpus of the trust is too large or unreasonable, and accordingly will make such an allowance.
A decree will be advised in accordance with the views herein expressed. *Page 181