IN RE APPEAL OF NEW BRITAIN BANK AND
TRUST COMPANY, TRUSTEE (ESTATE OF
WILLIAM C. HUNGERFORD)

SUPERIOR COURT  JUDICIAL DISTRICT OF  FILE NO. 411694
HARTFORD-NEW BRITAIN AT NEW BRITAIN

Memorandum filed November 22, 1983

*Camp, Williams & Richardson,* for the appellant (New Britain Bank and Trust Company, trustee).

*Beach & Calder,* for the appellee (estate of the life tenant).

DOYLE, J. This case is an appeal by the appellant, the New Britain Bank and Trust Company (hereinafter the bank), trustee of the estate of William C. Hungerford,

under General Statutes § 45-288 from a decree of the Berlin Probate Court dated October 15, 1982, disapproving a final trust account filed by the bank and directing the bank to amend its account by apportioning certain accrued income in favor of the appellee, the estate of Mary E. Stratton, life tenant of the trust. In an appeal from the Probate Court, the Superior Court exercises limited statutory jurisdiction and "acts as a court of probate with the same powers and subject to the same limitations." *Heiser* v. *Morgan Guaranty Trust Co.,* 150 Conn. 563, 565, 192 A.2d 44 (1963). The Superior Court hears the appeal as a trial de novo and does not decide merely whether the Probate Court abused its discretion. *Prince* v. *Sheffield,* 158 Conn. 286, 294, 259 A.2d 621 (1969). The Probate Court had jurisdiction in this case to approve or to disapprove a trust accounting. General Statutes § 45-4. While the Probate Court does not have direct power to construe wills, "[t]he Probate Court, and the Superior Court on appeal, may always construe a will when to do so is merely incidental to the determination of a matter within the court's express statutory jurisdiction," and can do so in connection with the determination of an account. *Burnham* v. *Hayford,* 141 Conn. 96, 100–101, 104 A.2d 217 (1954).

The Probate Court, in construing the language of the testamentary trust herein, held that all net income received or accrued as of or prior to October 17, 1981, the date of death of the life tenant, must be paid to the appellee, the estate of the life tenant. The bank initiated the present appeal. This case has been tried de novo upon a stipulation of facts. Aggrievement is hereby found to have been established by the bank.

The testator, William C. Hungerford, executed his last will and testament on June 9, 1932. He died a domi-

ciliary of New Britain, and his will duly admitted to probate by the Berlin Probate Court on October 18, 1933.

Paragraph sixteen of the will reads in pertinent part as follows: "All the rest, residue and remainder of my estate . . . . I give, devise and bequeath to The New Britain Trust Company . . . in trust, however, for the following uses and purposes, to wit . . . to pay over the net income to or for the maintenance and support of my wife, Mary Elizabeth, during the term of her natural life; and I authorize my said trustee, if in its sole opinion said net income is not sufficient to properly maintain and support my said wife, to use so much of the principal as in its sole opinion it may deem necessary to accomplish the object for which this trust is created. Upon the decease of my said wife, I direct my said trustee to divide the balance of said rest, residue and remainder, together with any accumulations thereof, equally between [eight charitable remaindermen]."

The parties have stipulated that the bank as trustee paid to Mary Elizabeth Stratton, the life tenant widow, during her lifetime the income received upon the principal and assets of the trust. Certain income accrued upon the assets prior to October 17, 1981, the date of death of the life tenant, but that income was not received in hand by the bank prior to October 17, 1981. This accrued income, totaling $19,877.84, consisted of (a) cash dividends upon stock declared and of record prior to October 17, 1981, but not paid until after said date; (b) income upon bonds from the last scheduled payment date to October 17, 1981; and (c) income upon certain pooled or common funds from the last scheduled payment date to October 17, 1981. The bank made the final quarterly payment of income to the life tenant on October 15, 1981, two days prior to her death.

The bank prepared a final account of the will for the Berlin Probate Court for the period from October 16, 1980, to October 17, 1981, which showed principal assets on hand as of October 17, 1981, totaling $2,779,048.24. The final account also indicated that all income accrued on or prior to October 17, 1981, but not received in hand by the bank on or prior to October 17, 1981, was not to be paid to the estate of the life tenant, but rather was to be paid to eight charities named as remaindermen under paragraph sixteen of the will.

The basic issue before the court is whether the estate of the life tenant is entitled to income accrued but not actually received by its trustees at the time of the death of the life tenant.

The general rule, in the absence of a contrary intent expressed in the testamentary trust, is that income which accrues prior to the death of the life tenant passes to the estate of the life tenant. *Gorham* v. *Gorham,* 99 Conn. 187, 193–94, 121 A. 349 (1923); Restatement (Second), Trusts § 235A (a). If the right to income has accrued during the tenancy of an income beneficiary but has not been received, and the income is received after the beneficiary's death, it should be paid to the representative of the deceased beneficiary. Bogert, Trusts and Trustees (2d Ed. Rev.), § 818, p. 412 n.72; *Cromwell* v. *Converse,* 108 Conn. 412, 432–33, 143 A. 416 (1928);[1] *Danbury National Bank* v. *Gridley,* 20 Conn. Sup. 314, 320, 134 A.2d 572 (1957).

---

[1] In *Cromwell* v. *Converse,* 108 Conn. 412, 143 A. 416 (1928), the trustees had been given complete discretion (unlike the present case) to apply income to the decedent's son for his "maintenance and support." The court said (pp. 432–33): "The testator intended to provide for his son's maintenance until his decease. He had placed these trusts in the hands of trustees and given them authority to determine what amount of their income should be paid to his son. They made the decision and set apart all of the income for the son. Nothing remained but to pay it over to the son. There can be little

The meaning of a will provision "is to be determined from the intent expressed by the language used, construed in the light of the surrounding circumstances as of the date the will was executed." *Frey* v. *Greenberg,* 151 Conn. 663, 667, 202 A.2d 142 (1964).

The testator's widow was clearly the object of his bounty in the will. He left her $200,000 outright, obviously a substantial sum in 1932. He also gave her their homestead and its contents, tangible personal property, the life use of Avolon Farms in Kensington, the net income from his residuary estate for her natural life, and discretionary principal therefrom if needed. She was undoubtedly his primary concern.

The bank claims that paragraph sixteen expressly directs the trustee to pay over the income of the trust only "during the term of her [the life tenant's] natural life" and only for her support and maintenance. Therefore, they conclude that upon the death of the life tenant the duty to pay over the income to the life tenant ceases and the accrued income is to be added to the principal and paid over to the remaindermen. The phrase in paragraph sixteen, however, "to pay over the net income to or for the maintenance and support of my wife . . . during the term of her natural life," in fact requires the bank to pay over *all* net income either to the decedent's widow *or* for her maintenance and support. It does not mean that the net income must be used *only* for her maintenance and support. The use of the word "or" compels payment of "the net income" to her directly, or, in the alternative, for her mainte-

or no question as to the testator's intention. That will be best carried out if the net income accruing prior to the decease of [the son] is apportioned and paid over by the trustees to his estate. The determination by the trustees that the income so set apart should be paid to [the son] was revocable in his lifetime but became irrevocable upon his decease."

nance and support by payment to a third party. The phrase should not be construed to prohibit payment of accrued income to her estate.[2]

It is inconceivable that the testator had intended his wife to be without income for her maintenance and support for *any* period of her life.[3] He knew that obligations occur in one period and may be payable in a later period. If his wife should die at any time within the period between payments, he knew that obligations of her contracting would be liable to be outstanding, but that income earned upon the trust and in the hands of the bank for the purpose of providing for her maintenance and support would, if applied to the payment of the outstanding accounts, probably liquidate them. This testator surely did not contemplate or desire that any portion of the income from this trust for the maintenance of his widow, which income had accrued prior to her death, would not be available to pay for her debts, but would instead pass to the eight remaindermen.

Paragraph sixteen of the will reads as follows: "Upon the decease of my said wife, I direct my said trustee to divide the balance of said rest, residue and remainder, *together with any accumulations thereof,* equally between [eight charitable remaindermen]." (Emphasis added.) The bank urges that the testator's use of the word "accumulations" in the gift over to the remaindermen expresses an intention to include accrued income therein.[4] The word "accumulations" by itself, however,

---

[2] Indeed, the bank had paid *all* net income to the widow during her life, except for the accrued income which is the subject of this appeal.

[3] *Cromwell* v. *Converse,* 108 Conn. 412, 428, 143 A. 416 (1928).

[4] The bank relies upon *Loring* v. *Cotter,* 339 Mass. 689, 690, 162 N.E.2d 294 (1959), in support of its position. In *Loring,* it is seen that the testator had directed the trustees to "pay over the principal fund with any accumulations *of income"* to the remaindermen. Id., 689. (Emphasis added.) Since in the present case a testamentary intent to include accumulations *of income* in the gift over to the remaindermen is not at all clear, the reliance of the bank is misplaced.

has no technical or fixed legal meaning. *Commercial Trust Co. of New Jersey* v. *Spiegelberg,* 117 N.J. Eq. 171, 174, 175 A. 164 (1934); 90 C.J.S., Trusts § 354, pp. 638–39 n.88. Nowhere in the will does the testator herein define what he means by "any accumulations." He does not state that "accumulations" are "income accumulations," although accumulations can also include funds of principal because of failure of other dispositions. *Hoadley* v. *Beardsley,* 89 Conn. 270, 281, 93 A. 535 (1915). He does not clearly direct such income to the remaindermen by saying, "together with accumulations of income which are accrued but undistributed at the death of my wife." On the other hand, he might reasonably have used the word "accumulations" to mean the substantial increase in the principal of the paragraph sixteen trust assets caused by the death of the five life tenants under paragraph thirteen. He might also reasonably have used the words "any accumulations" to denote principal assets of whatever nature which became a part of the remainder assets after the establishment of the paragraph sixteen trust, whether by lapse of bequests or devises, the acquisition of after-discovered assets, or otherwise.

Since his widow was clearly the primary object of the testator's bounty, this testamentary objective should not be destroyed without a clear and unmistakable direction to that effect. No such direction or intent can be found in his will. An overall examination of the will discloses no clear testamentary intent to include accrued income within the word "accumulations" as used in paragraph sixteen.[5]

---

[5] "The words 'all accumulations thereon' unquestionably mean something and clearly may be given effect without resorting to any such harsh, unreasonable and forced construction, as contended for on behalf of the remaindermen. By these words, the settlor unquestionably meant and intended only such income as had not already otherwise been disposed of by him, namely, that accruing or accrued between the time of his wife's death and the final distribution of the trust estate. Under no circumstances

Connecticut adopted the Uniform Principal and Income Act in 1939, which enactment is now codified in General Statutes §§ 45-110 through 45-119. Such legislation applies to the present trust and to all trusts, no matter when created.[6] These statutes do not change the applicable common law as set forth above, but they reinforce it.[7]

For the reasons set forth above, the court concludes that the appellee, the estate of the life tenant, is entitled to all net income of the paragraph sixteen trust received or accrued on or before October 17, 1981. Accordingly, judgment may enter in favor of the appellee in the amount of $19,877.84, plus statutory interest at the rate of 8 percent per annum from the date of execution of the final account on December 12, 1981, to the date of payment.

---

can it reasonably be said that he thereby meant or intended income earned or accrued during his wife's lifetime, a disposition of which he had already made by his specific direction that such be paid to her. . . . By no stretch of the imagination can it be said that the settlor intended to impliedly countermand a specific disposition and to effect a redisposition of money which he had already disposed of and given outright to his wife, and which in accordance with his specific directions should have been paid out to her and, therefore, not have then been in their hands. . . . The trustees will be instructed and directed to pay over to the executors of [the wife] that portion or part of the fund in question which represents income accrued during her lifetime, but not yet paid." *Commercial Trust Co. of New Jersey* v. *Spiegelberg,* 117 N.J. Eq. 171, 175–76, 175 A. 164 (1934); see also *Phillips Exeter Academy* v. *Gleason,* 102 N.H. 369, 377, 157 A.2d 769 (1960).

[6] General Statutes § 45-111; *Manufacturers Hanover Trust Co.* v. *Bartram,* 158 Conn. 48, 57, 255 A.2d 828 (1969).

[7] The definitions set forth in General Statutes §§ 45-110, 45-111 and 45-112 establish that accrued income in the subject trust is payable to appellee, the estate of the life tenant, unless the will contains a contrary intent.