ABIGAIL K. CAMPBELL-PARKER, JOSEPH O. CAR-
TER AND CECIL BROWN, TRUSTEES UNDER
THE WILL AND OF THE ESTATE OF JAMES
CAMPBELL, DECEASED, *v.* ABIGAIL K. CAMP-
BELL-PARKER, ABIGAIL W. KAWANANAKOA,
ALICE K. MACFARLANE, MURIEL K. CAMPBELL,
A MINOR, BEATRICE U. (MARY) CAMPBELL, A
MINOR, ABIGAIL HELEN KAPIOLANI KAWANA-
NAKOA, A MINOR, AND                                    KAWA·
NANAKOA, A MINOR.

APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.

SUBMITTED OCTOBER 4, 1906.     DECIDED OCTOBER 29, 1906.

FREAR, C.J., HARTWELL AND WILDER, JJ.

WILLS—*construction.*

> A legacy to a widow of one-third of the personalty to be "paid
> in cash, and if the condition and interests of my estate shall not
> warrant the payment of the entire sum hereby contemplated at one

time, then my executrix and executors shall pay the same as rapidly as the income and interests of my estate shall permit, without the sale of any real estate or the sacrifice of any personal property, as a means of raising such sum, but provided that the entire sum shall be paid within two years," was properly paid from cash on hand and income from all sources.

Expenses for maintaining and repairing residences under a direction in the will to "maintain said residences, buildings and grounds in suitable condition and repair at the charge of my estate," were properly paid out of the general income of the estate.

Under a direction in the will to "pay to my said wife for the use of herself and our children as a family allowance such sum monthly as may from time to time be approved and decreed by the court having jurisdiction of the probate of this will," it was proper to charge such family allowance against the gross income of the estate. Under the will such allowance ceased upon the discharge of the executors. An extra sum expended by the widow for traveling expenses of two of her children, which was approved by the circuit judge sitting in probate, is held in this case to constitute a proper charge against the estate.

Sums expended by the executors in connection with the realty, such as commissions on income from realty, insurance, taxes, water rates, alterations to buildings other than homesteads, etc., were properly paid out of the gross income of the estate where the only direction in the will is that the executrix and executors are to take possession of and manage the estate and collect the income therefrom pending distribution.

Under the provisions of the will the widow's one-third of the net income from realty should be paid before family maintenance for minor unmarried children is deducted.

A provision in the will that income be paid by the trustees to the widow and children does not entitle the widow and children to income beginning with the death of the testator but only from and after the discharge of the executors.

Under a provision that net income be "divided into as many equal parts as there shall be then in esse any of my said children by my said wife and shall be by said trustees paid to my said children from and after their respective majority or marriage share and share alike," a minor unmarried child takes a contingent interest.

### OPINION OF THE COURT BY WILDER, J.

This is a bill in equity brought by the trustees under the will of James Campbell to construe certain portions of said will. From the decree of the circuit judge all of the defendants appealed. The will was admitted to probate on June 26, 1900, and on July 3, 1905, the plaintiffs, as executrix and executors, were discharged and ordered to distribute to themselves as trustees the balance of the property. Testator left a widow and four daughters surviving. At the time this suit was brought two of the daughters were of age and had married, one of them having three children. At the testator's death there was over $200,000 cash on hand and an annual income from all sources of over $100,000.

The portions of the will material to be considered are as follows:

"First: My executrix and executors, hereinafter named, are directed to reduce to possession all and singular my estate, real, personal, and mixed, wheresoever situated; and to manage, control, care for and collect the income and revenue thereof, pending the distribution thereof as hereinafter provided; to catalogue, inventory and appraise the same, and to secure an adjudication, by the court of the Hawaiian Islands having jurisdiction of such matters, of the value thereof. As the interests of my wife, and of my children, concerning such valuation, may conflict, it is my will that each of said interests be fully represented in the proceedings for the determination of the value of my estate.

"Second: I direct my said executrix and executors to pay and discharge all debts which shall be outstanding against me or my estate, including all expenses of my last illness and funeral.

"Third: To my wife, Abbie Campbell, I give, devise and bequeath a sum of money equal and equivalent to a one-third (1-3) proportion of the sum which, in accordance with paragraph numbered first hereof, shall be finally decreed and determined to be the value of the personal property only, belonging and pertaining to my estate, at the date of such decree and determination, and after the payment and discharge, or provision for the payment and discharge of all obligations contem-

plated by paragraph numbered second hereof. Such sum shall be paid in cash, and if the condition and interests of my estate shall not warrant the payment of the entire sum hereby contemplated, at one time, then my executrix and executors shall pay the same as rapidly as the income and interests of my estate shall permit, without the sale of any real estate, or the sacrifice of any personal property, as a means of raising such sum, but provided that the entire sum shall be paid within two years from the date of my decease, and no deferred payments shall, within said period of two years draw any interest. The said sum to be and become the absolute separate property of my said wife, To have and to hold unto her, her executors, administrators and assigns forever.

"Fourth: It is my will that my said wife, and our children, namely, Abbie, Alice, Muriel and Mary, together with any other child or children that shall be born to us, shall, during the life of my said wife, have and enjoy the free use and occupation of my residence-houses and grounds at Emma Street, and at Leahi, in said Honolulu; together with all and singular the furniture and fittings therein; the outhouses thereon; and the horses, carriages, harness, stock and utensils therewith used or thereto in any wise appertaining,—as and for a place and places of family residence. Each of my children shall continue to enjoy such right of residence, with the incidental rights above described, while he or she shall remain sole and unmarried, and no longer; and this irrespective of whether my said wife be then living or not. And my executrix and executors, or the trustees appointed hereunder, as the case may be, shall maintain said residences, buildings and grounds in suitable condition and repair, at the charge of my estate, during the life of my said wife, and thereafter while all of my then living children shall be entitled to reside therein. But when any child, by contracting marriage, shall lose such right of residence, then and thereafter (my wife being dead,) the expense of such maintenance and repairs shall be borne by those of my said children who shall be entitled to occupy said premises hereunder.

"Fifth: I direct that my executrix and executors do pay to my said wife, for the use of herself and our children, as a family allowance, such sum, monthly, as may from time to time be approved and decreed by the court having jurisdiction of the probate of this will. And the trustees herein provided for, from and after their entry upon their functions of trust

hereunder, shall make such further provision for the maintenance of said children as is hereinafter directed.

"Sixth: At and upon the full payment and discharge of the obligations and bequests contemplated in paragraphs numbered respectively second and third hereof, I will and direct that my executrix and executors shall, as soon as may be, conclude the probate proceedings hereunder, and obtain a decree of distribution of my estate. And I do give, devise and bequeath unto the trustees hereinafter named, and to those of them who shall be living and resident within the Hawaiian Islands at the date of such decree, all the rest, residue and remainder of my estate, not hereinbefore otherwise given, devised or bequeathed. TO HAVE AND TO HOLD unto said trustees, their respective heirs, executors, administrators, assigns and successors in trust hereunder, forever. BUT IN TRUST NEVERTHELESS, for the uses and purposes hereinafter expressed and set forth, that is to say:—

"Seventh: With respect to my said residence-houses, and premises, and the personalty therein and thereon, as mentioned in paragraph numbered fourth, hereof, to permit and suffer the same to be used and occupied, and to maintain and keep the same in repair, as provided in said paragraph fourth, and, at the termination of the free use and occupancy thereof, as therein provided and limited, said property, both real and personal, shall be by my said trustees, (for the time being) partitioned among my then surviving children and the lawful issue of any deceased child (taking by representation,) in such manner, and upon such terms and conditions as to payment of owelty and otherwise, as the parties entitled hereunder shall agree. And in case of their failure to agree, within a reasonable time, it shall be the duty of such trustees to procure a judicial decree to make such partition; and to carry into effect any partition which shall be agreed upon or decreed hereunder, by suitable deed or deeds of conveyance.

"Eighth: With respect to all property which shall be so distributed to them, other than that mentioned in the last preceding paragraph, I direct my trustees aforesaid, to reduce it to possession, and to hold, manage, control, preserve and direct it; and to pay all costs and charges thereof, including their own commissions for such administration. And to collect all the rents, issues, profits, income and revenue thereof, and collect and realize upon all credits and securities, at such times, and in such manner, and upon such terms as to them shall seem best,

—and to invest and re-invest, and keep invested,—and at will to change the investments of any and all moneys that shall come to their hands by virtue hereof, and which are not otherwise herein specifically bequeathed, assigned or appropriated; and to segregate, and keep separate and apart (during the life of my wife,) the accounts of and pertaining to the realty of my estate from the accounts pertaining to any and all other thereof.

"Ninth: And from and out of the net income, rents, issues and profits of and from the realty last aforesaid, said trustees shall pay the equal One Third part or portion thereof, in semi-annual or, (at the discretion of said trustees,) more frequent payments, to my said wife, for and during the remainder of her natural life. TO HAVE AND TO HOLD the amounts herein provided so to be paid, as and for her absolute and separate property,—unto my said wife, her executors, administrators and assigns forever.

"Tenth: And the remaining Two Thirds of the net income, rents, issues and profits of and from said realty, during the natural life of my said wife, and, after her death, the entire net sum thereof, shall be by my said trustees included in one fund with the net income and revenue of and from all my estate other than such realty, which shall be under their control by virtue of this will, and such fund shall be by them at stated intervals of not more than six months, divided into as many equal parts as there shall be then in esse any of my children by my said wife, and shall be by said trustees paid to my said children, from and after their respective majority or marriage, share and share alike; PROVIDED, that if any of my said children shall decease, leaving lawful issue, such issue shall stand in the place or places of his, her, or their parent or parents in all respects concerning the division, payment and receipt of the fund herein mentioned; and FURTHER PROVIDED that during the minority of said children respectively, and while they shall respectively remain unmarried, within such minority, said trustees shall provide him her or them being so minor and unmarried, with suitable maintenance and education, and funds for foreign travel, in so far as the same shall be suitable and desirable to their means and condition; and all sums expended under this provision shall be charged to Family Maintenance, and none of it shall be charged to said children, or any of them, individually. And any surplus revenues arising or remaining under the provisions of this paragraph, shall become a part of the principal of my estate, and shall be invested and reinvested

as such. The sums expended for family maintenance hereunder shall not be reckoned as a part of such net income as herein provided.

"Twelfth: It being my purpose herein to provide a safe and certain income and maintenance for my wife, our children and grandchildren, for and during the period of the trusts hereby established, I do will and direct that each female beneficiary hereunder shall receive and hold all moneys and other rights and privileges herein provided for, free from the debts and control of any husband she may have after the date of the execution of this will,—and that the trustees herein named, and their successors in trust hereunder shall keep intact my estate, and administer the same under the name of 'The Estate of James Campbell,'—and that the realty thereof, (except as herein provided in the case of said residence premises) shall be particularly and especially preserved intact, and shall be aliened only in the event, and to the extent, that the obvious interests of my estate shall so demand.

"Sixteenth: The provision herein made for my wife is intended, and shall be by her accepted, (if at all,) in lieu and full satisfaction of her dower interest in my estate. The word 'issue' as used herein, is intended to mean, and signifies, all persons lawfully descended from any of my said children as a common ancestor."

In the main, the will as a whole is clear and free from any serious difficulty as to its meaning. There is a marked distinction between the duties of the executors and of the trustees, which distinction is of importance in considering the matters involved. The desire to conserve the estate and provide at all times sufficient funds for the maintenance of the widow and children is clearly indicated all through the will. With these few observations we will now proceed to discuss the questions involved.

1. Is the legacy to the widow payable (a) out of the cash on hand at the death of testator and proceeds of personalty subsequently converted by the executrix and executors, or (b) out of the cash on hand at the death of testator and proceeds of personalty subsequently converted as well as the net income from the realty and personalty of the estate or either of them?

The legacy was paid from cash on hand and income from all sources, which course was approved by the circuit judge. We have no doubt that the executrix and executors acted in accordance with the intention of the testator as expressed in the will. The will provided that the legacy should be paid in cash, and "if the condition and interests of my estate shall not warrant the payment of the entire sum hereby contemplated at one time then my executrix and executors shall pav the same as rapidly as the income and interests of my estate shall permit without the sale of any real estate or the sacrifice of any personal property as a means of raising such sum provided that the entire sum shall be paid within two years." The fact that payment was to be made without the sale of any real estate or sacrifice of personal property and two years were allowed within which to make it as the income and interests of the estate (which means the estate as a whole) warranted, shows very clearly the intention of the testator. Before the distribution of the estate to the trustees no distinction whatever is made by the testator as to income whether from personalty, from realty or from any other source. The testator evidently believed that with the cash that would be left at his death, together with the large income of the estate, this payment could be made in two years' time without the disposal of any of the property. This belief was justified as shown by the facts after the testator's death. The ruling of the circuit judge on this point should be affirmed.

2. Should the sum of $46,000 paid by the executrix and executors for maintaining and repairing the Emma street and Waikiki residences be charged against the principal of the personalty of the estate or the income thereof or against the realty or income thereof?

It was held by the circuit judge that this sum should be charged against the gross income from realty. The will provides that the residences shall be maintained in suitable condition and repair at the charge "of my estate" for the use of those entitled to occupy the same. During the administration period, as already pointed out, the will makes no distinction between income from realty and income from personalty, and

in the absence of any particular direction to the contrary it would seem that this expense should be paid out of the general income of the estate. Moreover, as the testator has directed that such expense should be at the charge of his whole estate, that settles the matter. The ruling of the circuit judge on this question should be reversed.

3. Should the sum of $93,000 expended by the executrix and executors for family allowance and approved by the circuit judge sitting in probate be charged to principal or income of personalty or to income from realty or out of all three or any two of such funds, and did such family allowance cease upon the discharge of the executrix and executors?

The circuit judge held that this sum was chargeable against the income from all sources, that is from both personalty and realty, and that such allowance should cease upon the discharge of the executrix and executors. The direction of the will is to pay to the widow for the use of herself and children as a family allowance such sum as may be approved by the probate court. This sum has been so approved, and it is only a question of whether it should be charged to any particular fund. As no specific fund was named it was properly paid out of the income from all sources. It is also clear that this family allowance, so far as the executrix and executors are concerned, ceased upon their discharge, as the will directs that the trustees shall make further provision for the maintenance of the children, and obviously the executrix and executors could not make payments under the will after they had been discharged as such. The ruling of the circuit judge on this point is affirmed.

4. Should the sum of $85,000 expended by the executrix and executors for expenses in connection with the realty, such as executors' commissions on income from realty, insurance, taxes, water rates, alterations to buildings other than homesteads, etc., be charged against principal of personalty or against income thereof or against the income of the realty?

The holding of the circuit judge that this should be charged against the income from the realty was probably based on the

fact that the trustees were directed to keep separate accounts of income from realty and income from personalty. But, as already pointed out, until the discharge of the executrix and executors no distinction is made in the income whether derived from realty or from personalty. The will provides that the executrix and executors are to take possession of and manage the estate and collect the income therefrom pending distribution. Like any other expense of administration, in the absence of direction in the will to the contrary, it should be paid out of the gross income from all sources. The decree on this point should be reversed.

5. Should the sum of $3745.95 expended by the widow prior to the discharge of the executrix and executors (over and above the family allowance of $1500 monthly) for the traveling expenses of two of her children constitute a proper charge against the estate?

This amount was allowed and approved on the final settlement of the accounts and constituted an allowance for the family in addition to the $1500 monthly. We see no reason in this suit for setting aside such allowance and approval. The decree on this point is affirmed.

6. Are the sums directed by the will to be paid by the trustees for maintenance of the children chargeable against the balance of the income of the estate before or after deducting the widow's one-third part of the net income of the realty?

Paragraph 8 of the will directs the accounts pertaining to the realty of the estate to be kept separate and apart from the accounts pertaining to the balance. Paragraph 9 directs payment to the widow of one-third of the net income from the realty. Paragraph 10, after providing as to the balance of the income from realty together with the income from all other sources, directs the trustees in a proviso to provide the minor and unmarried children with suitable maintenance and then says, "and all sums expended under this provision shall be charged to family maintenance, and none of it shall be charged to said children, or any of them, individually. * * The sums

expended for family maintenance hereunder shall not be reckoned as a part of such net income as herein provided." The question is whether or not this family maintenance is charged against any particular part of the income, that is, whether in the last sentence of paragraph 10 of the will the words "such net income as herein provided" mean the net income referred to in paragraph 10. In the first place there is an absolute direction to keep separate and apart the accounts pertaining to the realty. Then there is a provision with no limitation or qualification to pay one-third of the net income from realty to the widow for life. And then comes a provision relating to the disposition of the balance of the income from realty together with the income from all other sources, namely, that it shall be divided into as many equal parts as there shall then be children in esse and paid to said children from and after their respective majority or marriage. This last provision is qualified and limited by the direction to provide family maintenance for the minor unmarried children. The provision for family maintenance being a limitation on the general direction to divide a certain part of the income for the children cannot be held to qualify the previous absolute direction to pay the widow one-third of the net income from the realty, particularly in view of the further provision that the trustees shall keep separate the accounts as to realty and personalty, which separation of the accounts by the trustees begins on the discharge of the executors. Therefore, the widow is to be paid her share of the net income of the realty before any family maintenance is deducted. The decree should be reversed on this point.

7. Are the widow and children entitled to any share of the net income provided for in the ninth and tenth clauses of the will pending the closing of administration?

We have no hesitation in answering this question in the negative. It is only after the administration is closed and the estate is distributed to the trustees that either the widow or any of the children begin to share in the income and it is only from

that time that the accounts are to be kept separate and the income apportioned.

8. Are the shares of the unmarried minor children vested or contingent?

The will in paragraph ten directs that two-thirds of the net income from the realty, together with all the net income from the personalty, shall be included in one fund, which fund shall at least once every six months be "divided into as many equal parts as there shall be then in esse any of my children by my said wife and shall be by said trustees paid to my said children from and after their respective majority or marriage share and share alike. * * And any surplus revenues arising or remaining under the provisions of this paragraph shall become a part of the principal of my estate, and shall be invested and reinvested as such." In our opinion these interests are contingent. The vesting is postponed until majority or marriage. This is consistent with a general view of the whole will. In case of the death of any minor unmarried child such portion of the accumulated income that would otherwise go to such child on majority or marriage then becomes surplus revenue referred to by the testator and is to be added to the principal of the estate. The sentence as to surplus revenues would be useless and unnecessary if the interests of the minor unmarried children were vested.

The decree appealed from is affirmed except as to questions 2, 4 and 6 and as to those questions it is reversed.

*Holmes & Stanley* for plaintiffs.

*A. G. M. Robertson, J. J. Dunne, R. W. Breckons, E. C. Peters* and *E. M. Watson* for defendants.