In re Estate of James McKeon.

JOSEPHINE CHRISTY, Appellee, v. DAVID McKEON, Administrator, Appellant.

No. 44964.

FEBRUARY 6, 1940.

REHEARING DENIED MAY 11, 1940.

D. M. Kelleher and Reynolds, Meyers & Tan Creti, for appellant.

Howard & Bolte and Kline & Neu, for appellee.

HALE, J.—Josephine Christy, appellee, claims on an express contract for services rendered decedent, in which she alleges that such decedent agreed he would pay to the claimant a small amount, sufficient to cover the cost of her clothing and personal expenses, and that in addition thereto he would compensate and pay to claimant, out of his estate at the time of his decease, such amount as would make for the claimant a sum in excess of any amount which she would be able to earn in teaching school, and that employment would be for 12 months each year and not limited to 9 months as in a school year; and that he agreed to make provision therefor by will. Claimant informed decedent that she had been receiving $90 per month and was offered $125 per month, and that she would be able to earn in a schoolroom not less than $125; and she consented to such arrangement and consented to give up her work as a schoolteacher and continued in the employment of decedent from about March 15, 1924, down to the date of his death, during which time she looked after the home of decedent, did the family washing, tended garden, assisted with chores, and assisted the decedent in the clerical matters connected with his business affairs, fully complying with the terms of said arrangement, agreement, and understanding. She alleged that there was due and owing to her by reason of the performance of the contract the sum of $20,975 for such continuous services to March 8, 1938—13 years, 11 months, and 24 days at $125 per month. She also claims pay for 3 days' services after death and until burial, which the evidence shows reasonably worth $3 per day. No claim is made for any amount which she alleges decedent agreed to pay from time to time for clothing and personal expenses.

The defendant administrator as defense in addition to (1)

the denial existing by operation of law, makes the special defense (2) that the claimant was employed by decedent in the capacity of housekeeper, at wages according to the reasonable value of her services, the amount to be fixed from time to time between claimant and decedent in accordance with prevailing wage standards; (3) specially denies that payments were to be deferred to the time of James McKeon's death or were to be made by will; and (4) states that claimant was paid and accepted as compensation for her services the wages paid her from time to time and that claimant had full and complete knowledge of the dates and amounts of such payments.

Trial resulted in verdict for claimant in substantially the amount claimed, and from verdict and judgment thereon and from the overruling of defendant's motion for new trial and exceptions to instructions, defendant appeals.

The wife of James McKeon died in February 1924. There were no children, but a nephew of the wife, Donald Christy (a brother of claimant) had lived in the McKeon home for 6 years prior to his aunt's death, and continued to live there for about 6 years thereafter. James McKeon survived his wife about 14 years, dying intestate March 8, 1938, at the age of 77. His next of kin and heir was his brother, Andrew McKeon. James was born in Wisconsin and attended school there, farmed in Wisconsin, moved to Iowa and bought the 120-acre home farm in Carroll county, where he resided, except for a few years, until his death. Though not a man of much schooling, he had good business ability, and at the time of his death was the owner of 640 acres of land and about $40,000 in cash and securities.

Josephine Christy, the claimant, a niece of Mrs. McKeon, was at the time of the latter's death about 28 or 29 years old, a high school graduate, had a first-grade uniform county teacher's certificate, and had taken some advanced work in the State Teachers College, and some extension work. She had taught school some years, at a salary ranging from $80 to $125 per month, the latter for 1 year only.

▉▉▉ The principal witness as to the claim of Josephine as to a contract was her brother Donald, who testified to various conversations he had overheard while living at his uncle's house. There is in fact no other witness who testifies fully to any form of agreement between claimant and James McKeon. Several

testified as to his expressions of satisfaction with the work done by claimant, and general statements relative to his intention to reward her. It appears that she fully carried out her part of any such agreement. There is ample testimony as to the care she took of the home and of the decedent, and the work she performed in the house and on the premises. But the only witness who testifies directly as to a contract is Donald, and the court so instructed. In substance his testimony is as stated in the claim. Objection is made by defendant that no specific amount is mentioned as compensation, but evidence was introduced that James had been informed of the amount of her wages in the past, and that he had stated that she could make more in making a home for him than she could expect to make teaching and that it would be a 12-month job each year instead of 9 months. On examination of the testimony offered we think there was evidence sufficient to submit to a jury on the question of a contract. In re Estate of Newson, 206 Iowa 514, 219 N. W. 305.

█ The claim is not on quantum meruit for services performed, but on what is alleged to be an express contract. To constitute such there must have been an offer and acceptance as to the same thing. See Franklin v. Tuckerman et al., 68 Iowa 572, 27 N. W. 759.

In In re Estate of Newson, supra, the court states [206 Iowa 514, 518, 219 N. W. 307]:

"It is agreement to, and mutual understanding of, the existence of an obligation assumed by one of the parties to the other, that, for the purpose of the point now about to be considered, is the essential element of a contract. Usually agreement is arrived at by means of a proposal or offer, express or implied, from one side, expressly or impliedly accepted on the other. But formality in proposing and accepting is not required. There must be an intention to assume legal liability, as distinguished from a mere ebullition of emotion or expression of intention to do an act of generosity. A promissory expression without intention to contract is not sufficient. 1 Page on Contracts, (1st Ed.), Section 22 et seq.; 13 Corpus Juris 263 et seq.; 6 Ruling Case Law 585 et seq. The existence of the mutual understanding, the proposal and acceptance, may be implied from conduct and circumstances. These may be shown by cir-

cumstantial evidence, or by the admission of the party to be charged.'' (Citing cases.)

See also Kladivo v. Melberg, 210 Iowa 306, 313, 227 N. W. 833, 837, wherein it is stated:

''The existence of a contract, 'meeting of the minds,' intention to assume an obligation, the understanding, are to be determined not alone from words used, but in the situation, acts, and conduct of the parties, and from their situation and the attending circumstances, and by the inferences which mankind would ordinarily and reasonably draw therefrom.'' (Citing cases.)

Defendant denies that the evidence indicates any such meeting of the minds. ·The evidence shows, as heretofore indicated, that so far as performance of the alleged contract by claimant is concerned, it was completed; and there was evidence sufficient to support the finding of the jury as to her acceptance thereof. Franklin v. Tuckerman et al., supra. No testimony of a contract, of course, was offered, or was permissible, by the claimant as a witness. The substance of the offer, so far as the evidence shows, was:

''She told him she had an offer for as much as $125 a month in another school. She told him she couldn't possibly afford to give up teaching school to come in his home as housekeeper, or for any wages of that type. He told her he didn't expect to have her for that purpose, but wanted her to come and make a home for him.''

In answer to another question, the evidence was:

''He said he wanted her to stay with him as long as he lived. He would give her spending money for clothes and personal needs just as she needed it, but she didn't have to consider it wages, because it was not wages, and that that wasn't her purpose there. He told her he would pay her an amount more than she would ever expect to make teaching school, more than she would ever expect to realize out of it, and he would provide at the time of his death in a will for her to be taken care of in that way.''

There was further testimony of the witness that the claim-

ant suggested that they talk it over with her father and see whether it was satisfactory to her father. Later the witness related a conversation had between the decedent and claimant's father, in which he testified that his Uncle James had stated that if he had to employ a housekeeper it would break up his home, if he had to depend upon a mere housekeeper, and that claimant could help him in his business affairs; and at that time decedent stated:

"I am getting old and she can help me a lot, and if she is worth $125 teaching school, she is certainly worth more than $125 a month to me."

He then requested the father to persuade her to stay, and that he (James) would see that at the time of his death she would be provided for by will in an amount "that will exceed any amount she will ever be able to expect in school teaching."

█ We think the language used sufficiently constituted an offer, definite in its terms, to pay to claimant in consideration of the performance of services which she performed; and was sufficient to authorize the jury to find therefrom the existence of a contract. It is urged that the statement or offer made to the father of claimant was not communicated to claimant, but there is testimony by the same witness that it was so communicated. Of course, the rule is well established that in the performance of services such as in the instant case, where it is claimed that they are performed under a contract, the performance must have been induced by a proposal and must have been in accordance therewith; but we think there was sufficient evidence from which the jury could find that the performance of the services was in accordance with some form of agreement or understanding between the parties. There was evidence by several witnesses, in addition to the evidence as to the terms of the contract or arrangement, which is corroborative as to the intention of the decedent. One such witness was Mrs. Caswell, who testified that in a conversation with decedent he had stated that he intended to see that Josie was properly cared for, and that he had told her he would give her spending money, the little she would need, and at the end of his life he would leave her a home and well cared for. This statement of decedent, of course, was made after the conversation testified to by Donald, but was

evidence proper for the jury to consider on the question of whether or not there was any such arrangement or agreement. What the agreement was was also for the determination of the jury.

[5] Objection is made to the instruction of the court, where in the statement of the claim the court used the words "at a stated amount per month, which the claimant alleges was $125 per month"; and to instruction No. 6, where the court, in setting out the elements necessary to recover upon the claim, instructed the jury that it was necessary to find that the decedent had agreed that he would "make provision by will to compensate and pay to her out of his estate at the time of his death at the rate of a stated amount per month." We see no objection to the use of this term under the testimony and circumstances of the case. There could be no recovery under the allegations of the claim unless the jury did find that there was an agreement to pay a stated or fixed amount. That that is certain which may be made certain is elementary, and as heretofore indicated, there was evidence as to the amount stated or fixed by the decedent. The word "stated" means no more than determined, fixed, or settled, and we think it was properly used in the instruction. The claim as a whole recites the agreement of decedent to pay an amount "more than she could expect to make teaching school." Instead of using the exact language, the court submitted the question in the form referred to above. We find no error here.

Exception is also taken to the fact that there were submitted to the jury two interrogatories. The first was for the jury to determine what amount per month, if any, they found that James McKeon agreed should be paid to the claimant out of his estate at his decease; and the second was to determine whether such stated amount per month was to be paid for 9 months each year or for 12 months each year. These interrogatories were submitted under an instruction that they were to be answered in the event that the jury found for claimant, and they were directed not to answer if the verdict was for the defendant. We see no error in the submission of these interrogatories or in the language used in the instruction. Before they could be answered the jury must have found under the

evidence that there was a stated or agreed amount, and the findings therein conformed to the general verdict.

Defendant complains of instruction No. 8, in which the jury were informed that under the law the claimant was not permitted to testify or to tell what the agreement between her and the decedent was, and that if any agreement was in fact made between the parties it must be proven by testimony other than that of the claimant. We do not see any error, or anything prejudicial, in informing the jury of the law in this respect. The instruction is definitely limited as to any communication between decedent and the claimant, and is not open to the objection that the jury would believe that it applied to the communication of the contract to her through her father. There was other evidence as to the communication, and the court, over objection of the defendant, refused to permit testimony as to the conversation between the father and daughter, presumably on the authority of Hankins v. Young, 174 Iowa 383, 156 N. W. 380. We do not think the defendant can now complain of this instruction.

Defendant complains of the action of the court in not submitting to the jury the question of payment. Payment as a part of a different contract of employment was specially pleaded by the defendant and was not submitted as an issue in the instructions. The burden rested upon the defendant to establish such different contract, including payment, and, if the evidence justified, it was the duty of the court to submit the issue to the jury. There was evidence submitted indicating that some payments had been made by the decedent from time to time, and this might tend circumstantially to support the defendant's theory that claimant was working for wages, which was also specially pleaded; but it is also consistent with and does not negative plaintiff's claim as to her contract. There was no evidence of any agreement to work for wages, other than what might have been inferred from this character of testimony. Defendant calls attention to statements made to Andrew (the brother of decedent) some days after the death, in which, according to Andrew, claimant requested that she be given the home farm, the 120-acre tract. The evidence along this line was to the effect that in her conversation she did not make any statement or claim that she went to work on a promise that James

would leave her money or pay her for her work when he died. Andrew stated that in the conversation he told Josephine that James had paid her $40 a month, but she denied this and stated that he did not pay her by check but paid her in cash from his pocket. She denied the payments would amount to $7,000, and did not state at any time that she had received wages for her work. Other testimony much to the same effect was given by the defendant administrator and his sister, Andrew's son and daughter.

The claimant herself, examined in rebuttal, did not deny a part of the conversation with Andrew, and admitted that there was no promise of the home farm. She denied that she had told him that James had not promised her anything. Her statement of the conversation was that Andrew had said that she had got $7,000, and she told him she had never received any such amount. She did not deny that she had received some money and there is also testimony of the brother Donald that payments were made to his sister Josephine. Testimony of this nature was proper to be considered by the jury as tending to show that the present claim was an afterthought or that the claimant had failed under suitable circumstances to advance the demand now relied upon, and as tending to support defendant's theory of the nature of her employment as pleaded in grounds two and four of his answer; but with the failure to establish such grounds, the question of payment therefor was eliminated. The payment of small amounts was consistent with the claimed contract. Also, even if the claim of payment had been in issue, there was no evidence submitted by the defendant as to the application of payments. If there was such a contract as alleged by claimant, there were two promises—one to pay the small amounts from time to time, and the other to pay at death. In such cases there arises the presumption that the payments are to be applied first to debts which are due. In the absence of other circumstances such will be the application made by the court. See Pospishil v. Jensen, 205 Iowa 1360, 219 N. W. 507; Cain v. Vogt, 138 Iowa 631, 116 N. W. 786, 128 Am. St. Rep. 216. With no showing as to the application of such payments as were made, the presumption would apply. We think there was no error in not submitting this question to the jury.

Other objections made by the defendant are as to the

statement of the issues tendered by such claimant. It is well known and has been frequently laid down by the courts that in the statement of claims there is not the same degree of care required as in ordinary pleading. It is held that the statement of a claim against a decedent's estate need not conform to the technical rules of pleading, and the facts need not be set out with the particularity of a complaint. Roth v. Ravich, 111 Conn. 649, 151 A. 179, 74 A. L. R. 364, note at page 373, and cases cited therein, including Rule v. Carey, 178 Iowa 184, 159 N. W. 699; In re Newson, supra.

Other assignments of error by the defendant we think are covered by the foregoing discussion. We have examined all the objections made by the defendant, and it is our conclusion that the cause was properly submitted to the jury under the issues and evidence in the case, and having been determined by them, we see no reason to disturb the verdict.

Finding no error, the cause should be, and it is, affirmed.—Affirmed.

HAMILTON, C. J., and SAGER, BLISS, STIGER, OLIVER, and MILLER, JJ., concur.

RICHARDS, J., dissents.