RICHARD K. THORNDIKE & another, trustees, *vs.* FRANKLIN DEXTER & another, executors, & others.

Essex. January 6, 1960. — February 11, 1960.

Present: WILKINS, C.J., SPALDING, WILLIAMS, COUNIHAN, & WHITTEMORE, JJ.

*Trust*, Payment of income.

A direction in a will that the net income of a residuary trust established thereunder should "be paid quarterly, or oftener if convenient," to beneficiaries "living at the time of such payment" was a provision "otherwise" within G. L. c. 197, § 27, and the executor of a beneficiary of income who died "between the days upon which it . . . [was] payable" was not entitled to apportionment. [389, 390–391]

In a will establishing a residuary trust, a provision that the "net income of the trust fund shall be paid quarterly, or oftener if convenient, to my daughters living at the time of such payment and to the issue then living of any daughter of mine then deceased," did not disclose an intent that, whatever the cause and length of a delay in payment of income, it should be paid only to the beneficiaries living at the time when payment was made, and, where it appeared that extraordinary circumstances delayed the beginning of quarterly payments of income until after the death of one of the testator's two daughters nearly two years after his death, her personal representative, rather than her issue, was entitled to receive the income she would have received during her lifetime if expected and directed distributions could have been made, and was therefore entitled to one half of all the trust income received from the date of the testator's death to a May 26, the end of the last quarter elapsed before her death, including income in the hands of the testator's executor on May 26 as though then in the hands of the trustee and cash received after May 26 on items then accrued and payable which were the equivalent of cash on hand. [389–390, 391]

PETITION filed in the Probate Court for the county of Essex on October 24, 1958.

The case was heard by *Phelan*, J.

*Norman Landstrom*, stated the case.

*Francis S. Moulton, Jr.*, for Richard K. Thorndike, 3d, (*Philip J. Durkin*, guardian ad litem, with him).

*Richard Wait*, (*Rhodes G. Lockwood* with him,) for Franklin Dexter and another, executors.

WHITTEMORE, J.   The trustees under the will of Neal
Rantoul who died August 26, 1956, and whose will was
admitted to probate September 17, 1956, sought instructions
as to the disposition of one half of the income available for
distribution under the residuary trust.   The probate judge
who heard the petition on the pleadings, will and codicil and
certain agreed facts, entered a decree on May 7, 1959, which
provided that the executors under the will of Lucy S. Thorn-
dike, one of the daughters of the testator who had survived
him, but who had died May 31, 1958, "are entitled to one-
half of the net income which had accrued to the executors
of the will of Neal Rantoul prior to May 31, 1958."   A son
of Lucy and the guardian ad litem of her other two children
have appealed.

Article Seventh of the will, after setting up the residuary
trust, directed that "[t]he net income of the trust fund
shall be paid quarterly, or oftener if convenient, *to my
daughters living at the time of such payment* and to the issue
then living of any daughter of mine then deceased . . .
[emphasis supplied].   If at any time one of my daughters
shall have deceased and there shall be no living issue of such
deceased daughter, the entire income of the trust fund shall
be paid to my other daughter living at the time of such
payment . . . [or her then living issue if she is deceased]. . . .
On the termination of the trust, the capital of the trust
property, together with any income which shall have accrued
since the last payment of income by the trustees, shall be
distributed by the trustees free of all trusts as follows: . . .
[to designated issue of daughters] then living . . . [if none,
as though the testator had] then died intestate. . . ."

At the time of the testator's death an action of tort was
pending against him; the amount claimed therein exceeded
the value of the estate.   After his death a new action was
brought against the executors for the same amount.   Two
notices of claim, each for that amount, were filed in the
Probate Court.   On July 18, 1957, the time for filing claims
against the estate was extended to September 16, 1958.   On
September 6, 1957, a petition was filed for a decree ordering

the executors to retain all the assets of the estate in their hands. Both actions terminated favorably for the defendants on April 7, 1958, and April 4, 1958, respectively. See *Willett* v. *Webster*, 337 Mass. 98. The petition to retain assets was dismissed on April 28, 1958.

Prior to May 31, 1958, the trustees had received from themselves as executors distribution of income in the total amount of $8,000 which had been applied to expenses in connection with real estate. On May 31, 1958, the executors held, as balance of net income, $255,009.01 and there was then accrued, on bonds held by them, interest in the amount of $23,660.42, and interest on a capital interest in the firm of F. S. Moseley & Company in the amount of $3,000. On that date there were unpaid, but declared and payable to the executors, dividends in the amount of $2,764 on stocks held by the executors, and there were accrued expenses chargeable to income amounting to at least $45,000.

The testator in his will gave two immediately relevant directions: to pay the trust income "quarterly, or oftener if convenient" and to pay it to "daughters living at the time of such payment." It is plain that the testator, within the provisions of G. L. c. 197, § 27, intended to and has overcome the mandate of that statute otherwise operative, and has "otherwise provided" than that the income beneficiaries should have an apportionment of income if their right "terminates between the days upon which it is payable." See *Loring* v. *Cotter*, 339 Mass. 689. We do not, however, find an intent that, whatever the cause and length of the delay, the income shall be paid only to the beneficiaries living at the time when payment is made. Compare *Dolbeare* v. *Kirby*, 265 Mass. 259.

Extraordinary circumstances barred the beginning of quarterly payments for a period extending well beyond the time at or before which the testator could reasonably have expected that distributions of income would have begun in due course. See G. L. c. 197, § 21. Except for the unforeseen delay, a course of administration in accordance with the express directions of the testator and the established

rules would have given Lucy, on or before May 26, 1958 (measuring quarters from August 26, 1956, the date of death), one half of all the income then available for distribution. G. L. c. 197, § 26. *Minot* v. *Amory*, 2 Cush. 377, 382. *Wiggin* v. *Swett*, 6 Met. 194, 202. *Old Colony Trust Co.* v. *Smith*, 266 Mass. 500. *Wellman* v. *Boston Safe Deposit & Trust Co.* 295 Mass. 281, 283.

We think the intention implicit in both directions of the testator, though not expressed (see *Salter* v. *Salter*, 338 Mass. 391, 393, and cases cited), is that income be distributed as it would have been in Lucy's lifetime if expected and directed distributions could have been made. See *Hemenway* v. *Hemenway*, 171 Mass. 42, 46 (language underlined *post*); *Minot* v. *Amory*, 2 Cush. 377, 382; *Massachusetts Inst. of Technology* v. *Attorney Gen.* 235 Mass. 288, 297–298; *United States* v. *Higginson*, 238 F. 2d 439, 445 ("Such income is regarded for tax purposes as income which the beneficiaries own").

We need not determine whether the trustees could have so acted as to cause the time for payments to be measured otherwise than from the date of death. There having been no payments or other relevant action, the interval is to be measured from that date. *Minot* v. *Amory*, 2 Cush. 377. The decree, therefore, should apply to the income available for distribution on May 26, 1958, rather than on May 31.

The decree is, in another respect, susceptible of a construction which could give the executors of Lucy's estate more than they should receive. We refer to the specification of "income which had accrued to the executors." In *Hemenway* v. *Hemenway*, 171 Mass. 42, 43, 44–46, there was a provision for semi-annual payments and to pay "to such . . . as may be living at the time of payment"; the accounting dates were December 15 and June 15; and the widow died March 6, 1894. There was income accruing on December 15, 1893, which had not then accrued and become payable, but which became payable thereafter and was paid to the trustees before the death of the widow. The court said, "*If any one of them is not alive at the time when the payment*

*should be made, only those living at that time are to receive the payment,* and they are to receive all that is then payable. . . . The trustees should be instructed that there should be no apportionment of the net rents and income of the trust property received by them after December 15, 1893" (emphasis supplied). This states the applicable rule except that the net funds in the executors' hands payable as income on May 26 are to be deemed funds "then payable" as though held by the trustees (*Minot* v. *Amory,* 2 Cush. 377, 382. *Old Colony Trust Co.* v. *Smith,* 266 Mass. 500, 501. See *First Natl. Bank* v. *Truesdale Hosp.* 288 Mass. 35, 42–44), and cash received after May 26 on items then accrued and payable which were the equivalent of cash on hand, such as overdue coupons on bearer bonds, is to be accounted for as though on hand on that date.

The decree is to be modified to conform with this opinion and as modified is affirmed. The costs and expenses of this appeal are to be in the discretion of the Probate Court.

*So ordered.*