IN THE MATTER OF THE ESTATE
OF JAMES CAMPBELL, DECEASED.

No. 4319.

August 10, 1964.

Tsukiyama, C.J., Cassidy, Wirtz,
Lewis and Mizuha, JJ.

OPINION OF THE COURT BY CASSIDY, J.

The matter before us involves the construction of the will of James Campbell, deceased, in respect to the distribution of a portion of the income of his trust which was accumulated prior to the death of a life beneficiary.

The eighth and ninth paragraphs of the will direct that the trustees, during the life of the testator's widow, keep accounts pertaining to realty separate and apart from the accounts pertaining to other property of the estate, and pay to the widow one-third of the net income from the realty during her life in semiannual or, at the discretion of the trustees, in more frequent payments.

The tenth paragraph of the will reads in pertinent part:

"And the remaining Two-Thirds of the net income, rents, issues and profits of and from said realty, during the natural life of my said wife, and, after her death, the entire net sum thereof, shall be by my said Trustees included in one fund with the net income and revenue of and from all my Estate other than such realty, which shall be under their control by virtue of this Will, and such fund shall be by them at stated intervals of not more than six months, divided into as many equal parts as there shall be then in esse any of my children by my said wife, and shall be by said Trustees paid to my

said children, from and after their respective majority or marriage, share and share alike; Provided, that if any of my said children shall decease, leaving lawful issue, such issue shall stand in the place or places of his, her, or their parent or parents in all respects concerning the division, payment and receipt of the fund herein mentioned; * * *."

The testator left a widow and four children, all daughters, surviving him. Upon the death of their mother each of the daughters acquired a life interest in one-quarter of the income of the estate. One of the daughters, Princess Abigail Kawananakoa, died in 1945. One of her daughters, Kapiolani Campbell Field, died on April 8, 1961. Prior to that date, Mrs. Field, as one of the two surviving children of the Princess, had been entitled to[1] and had been receiving one-eighth of the net income of the estate. Mrs. Field left three children surviving her.

The trustees of the estate have adopted and for many years have followed a set practice of distributing income to the life beneficiaries on a monthly basis, the amounts of the distributions being predetermined on the basis of the current year's estimated income. The will requires the trustees to make an annual accounting. Underpayments to beneficiaries on the monthly installment basis have been adjusted in the year-end accountings.

On the date of Mrs. Field's death the trustees had cash on hand in the amount of $135,479.44. That was the difference between the aggregate of receipts of income from real property ($529,257.08) and interest ($5,336.29) from January 1, 1961 to April 8, 1961, and the aggregate of disbursements for expenses ($105,113.93) and distribution to beneficiaries ($294,000.00) during the same period.

Being in doubt as to whom the one-eighth share of

---

[1] See *Estate of Campbell*, 46 Haw. 475, 483, note 4, 382 P.2d 920, 933.

undistributed income formerly allocable to Mrs. Field should be paid, the trustees filed a bill in the Circuit Court for instructions presenting that question and, as an incident to it, the further question of what adjustments, if any, should be made in respect to the amortization of certain capital expenditures which had been prorated annually against income.[2]

Mrs. Field's three children and the executors of her estate were cited to answer the bill and set up their respective claims. One of the children, Edward A. K. Kawananakoa (whom we shall refer to as "the successor beneficiary"), appeared and filed an answer, asserting that under the will and specifically under the eleventh paragraph thereof, "an income distribution is authorized only to a living beneficiary," and that consequently any payment from the accumulated income to the executors of Mrs. Field's estate would violate the terms of the will. In their answer the executors claim "⅛ of all income received by the Trustees before and including April 8, 1961, less expenses properly chargeable against such income."

The trial court, acting pursuant to R.L.H. 1955, § 211-1, has asserted doubt on the principal issue presented by the bill and the answers filed by the executors and Edward A. K. Kawananakoa and on its own motion has reserved to this court the following question:

"Should a one-eighth share of the trust income not yet distributed on the date of the death of Kapiolani Campbell Field, to-wit, April 8, 1961, be distributed to her personal representatives or to those persons

---

[2] The bill for instructions also presented the question of the distribution of approximately $2,000.00 that had been withheld from Mrs. Field's income during the years 1959 and 1960 pursuant to the order of the Circuit Court in connection with the estate's 1951 accounts. However, the parties are in agreement that Mrs. Field's estate is entitled to the money which by this court's decision in *Estate of Campbell, supra,* 46 Haw. 475, 382 P.2d 920, was found to have been erroneously withheld.

succeeding under the will as income beneficiaries to the share of the income formerly payable to her?"

The record does not permit us to determine and we are not called on by the reservation to determine what income or deductions other than the actual receipts and expenditures mentioned above are to be taken into account in resolving the issue presented.[3]

One contention stressed by the executors is that the issue before us has been fully settled by the ruling of this court in *Campbell* v. *Kawananakoa*, 31 Haw. 500. In that case the question presented was how the $200,000.00 cash payment and the eleven annual rental installments of $200,000.00, beginning January 1, 1929 and ending January 1, 1939, agreed to be paid to the Campbell Estate by Ewa Plantation Company and Oahu Sugar Company in consideration of the granting of new leases by the estate to the plantations extending beyond the termination dates of the subleases they held under, should be treated as between existing and future life beneficiaries. The court held that the distribution of these twelve payments was not to be deferred until after January 1, 1940 and in the course of its opinion stated: "In our opinion it was the intention of the testator, under the circumstances here under consideration, that these installments of $200,000, which are clearly income, should go to those who are or will be income-takers at the dates when they severally accrue and become payable to the trustees. * * * He intended that the rents of his lands should be divided as they accrued amongst those who would then be income-takers."

---

[3] The amount of any undistributed income to be paid Mrs. Field's estate will be determined on remand either by agreement of the parties affected or by the trial court's adjudication on what adjustments should be made on each side of the ledger in striking the necessary account in respect to the one-eighth share of net income in dispute.

It is urged on behalf of the executors that by this holding the court adopted the rule "that the date on which income accrues and is payable to the trustees, rather than the date of distribution, determines who are entitled to take."

While the quoted portion of the opinion taken literally tends to support this contention, it is obvious that the case did not touch on the issue confronting us in this proceeding. The only question for decision in the 1930 case was, whether the eleven installments of enhanced rentals and the cash payment should be distributed to beneficiaries entitled to income during the years from 1929 to 1940 or, whether the payments should be held for distribution to beneficiaries entitled to income after January 1, 1940. The question of what happened to undistributed income at the death of a beneficiary was not and could not have been even remotely involved. *Campbell* v. *Kawananakoa* sets no precedent for nor is it of any aid in deciding the present case. The same may be said in respect to the executors' reliance on the holding of *Campbell Estate* v. *Campbell-Parker*, 18 Haw. 34, that the interests of each of the testator's daughters vested upon her attaining majority or her marriage.

The reserved question before us is open insofar as any precedent of this court is concerned.[4] It has to be decided in the usual manner by scrutinizing the pertinent provisions of the will to determine the testator's expressed or implied intent on the point.

---

[4] After the death of Princess Kawananakoa in 1945 a bill for instructions was filed in the Circuit Court to determine the same question presented here. By stipulation of the interested parties it was agreed that her share of undistributed income would be paid to the executors of her estate. Another of the testator's daughters, Muriel Campbell Amalu, died in 1951. A similar bill for instructions was filed and, in a contest between her children and the executors of her estate, the circuit court judge ruled in favor of the children. No appeal was taken from the decision. It, of course, is not binding authority in the present case.

The successor beneficiary, Edward A. K. Kawananakoa, relies heavily on the spendthrift trust provisions contained in paragraph eleven of the will, and particularly on the portion thereof reading: "And all payments in the last preceding paragraph authorized and provided for, shall be made, and shall be valid and effectual only when made to the beneficiary, devisee or legatee, in person, to whom the same shall appertain and belong, and upon his or her individual receipt."[5]

It is urged that the provisions in the spendthrift clause declaring that payments to a beneficiary will be valid only when made to the beneficiary in person and on his individual receipt, taken in conjunction with the language of paragraph ten to the effect that the periodic division of income shall be gauged by the number of children "then in esse," evidence the testator's intent that only his living descendants should participate in any division of income and that consequently the will must be construed to preclude the personal representatives of a deceased beneficiary from being paid any portion of the estate income remaining undistributed at the beneficiary's death.

Authorities cited in support of the successor beneficiary's position are: *In re Nixon's Estate,* 306 Pa. 261, 159 Atl. 442; *Green* v. *Bissell,* 79 Conn. 547, 65 Atl. 1056; *Hemenway* v. *Hemenway,* 171 Mass. 42, 50 N.E. 456; *Cowdery* v. *Northern Trust Co.,* 321 Ill. App. 243, 53 N.E.2d 43; *Kirwin* v. *Hall,* 169 Wash. 501, 14 P.2d 62.

For the executors it is contended that the cardinal intent of the testator is found in the twelfth paragraph of the will, reading: "It being my purpose herein to provide a safe and certain income and maintenance for my wife,

---

[5] Paragraph eleven is set out in full in *Welsh* v. *Campbell,* 42 Haw. 490, at 495. The validity of the spendthrift clause was upheld in *Welsh* v. *Campbell,* 41 Haw. 106.

our children and grandchildren, for and during the period of the trusts hereby established." It is argued that any construction which would cut off a life beneficiary's right to rely on receiving his share of the trust income as it accrued during his lifetime would do violence to the testator's intent so expressed and that the testator's manifest solicitude for his children and grandchildren requires a construction which would entitle the personal representatives of a deceased income beneficiary to his or her proportionate share of the income accrued and undistributed at the date of the beneficiary's death.

Cases cited in support of the executors' stand are: *Welch* v. *Apthorp,* 203 Mass. 249, 89 N.E. 432; *Union Safe Deposit & Trust Co.* v. *Dudley,* 104 Me. 297, 72 Atl. 166; *St. Mary's Hospital of Evansville* v. *Long,* 215 Ind. 1, 17 N.E.2d 833; *In re Pfenninger's Estate,* 135 Minn. 192, 160 N.W. 487; *Cromwell* v. *Converse,* 108 Conn. 412, 143 Atl. 416; *Commercial Trust Co.* v. *Spiegelberg,* 117 N.J. Eq. 171, 175 Atl. 164.

The cases cited on each side tend to support, but in a general way only, the respective positions for which they are offered. None of the cases can be considered anywhere near directly in point. We will not attempt at this point to analyze any of them. It is sufficient to state that the composite effect of the authorities in this field of law is well summarized in an annotation on the subject appearing in 141 A.L.R. 1466, p. 1467, as follows:

"No uniform answer can be given upon the question whether the estate of a life beneficiary is entitled to income of trust property which at the time of his death was available for distribution in the hands of the trustee but had not been paid over to the life beneficiary. The cases agree that the question depends upon the intention of the creator of the trust as manifested in the trust instrument, whether the trust is created

by a will (see 28 RCL 211, Wills, § 173) or by an instrument inter vivos. * * *

"Although no general rule is, in terms, laid down in the cases, it may be said, considering the cases as a whole, that in the absence of a contrary expression of intent in the trust instrument, it will be assumed that the creator of the trust intended that income which at the time of the death of a life beneficiary was available for distribution in the hands of the trustee, but had not actually been paid over to the life beneficiary, was to go to his estate. This general rule may be said to be supported, inferentially, by most of the cases cited in this annotation. * * *"

To like effect are 3 Scott on Trusts, 2d ed., § 238, p. 1851; 6 Page on Wills, Bowe-Parker Revision, § 59.9, p. 409; 4 Bogert, Trusts and Trustees, § 816, pp. 232-237; Restatement (Second), Trusts, § 235 A, p. 570; 33 Am. Jur., *Life Estates, Remainders and Reversions,* § 294, p. 802.

As has been noted, the surviving beneficiary's contention that every descendant must be living in order to receive payment of income is based to a good extent on the intent claimed to be derived from the spendthrift clause of the will and particularly from the inclusion in it of the restriction that all payments authorized by paragraph ten "shall be valid and effectual only when made to the beneficiary * * *, in person, * * * and upon his or her individual receipt."

It is our view that notwithstanding the tight provisions and the restrictive language of paragraph eleven its effect in the determination of this cause is negligible. The purpose of the inclusion of the spendthrift clause in the will was to protect an improvident beneficiary against his own folly by insulating him against overreaching creditors. It does not evidence intent to restrict the

amount of income for a beneficiary's maintenance. See *Cromwell* v. *Converse, supra,* 108 Conn. 412, 143 Atl. 416. The spendthrift provisions should not be taken to cut off benefits which would in the absence of such provisions be conferred by the will. The rule applicable is stated in 2 Scott on Trusts, 2d ed., § 158.1, p. 1129, as follows:

"Where the income of a trust estate is payable to a beneficiary and he dies, his personal representatives are entitled to the income which has accrued at the time of his death and which has not been paid to him, unless it is otherwise provided by the terms of the trust. Even though it is provided by the terms of the trust or by statute that the interest of the beneficiary shall not be transferable by him or subject to the claims of his creditors, the beneficiary's interest in such accrued income passes on his death to his personal representatives, if it would so pass in the absence of such a restraint on alienation. The purpose of the restraint on alienation is to protect the beneficiary, and when he dies he no longer needs such protection. The purpose is not to deprive the beneficiary's estate of the income which was payable to him but which had not been paid at the time of his death. Whatever is thus received by the personal representatives is a part of his estate and is subject to the claims of his creditors. Unless the claims of creditors preclude it, the beneficiary can dispose by will of his right to the income accruing up to the time of his death."

This brings us to the consideration of whether anything in the tenth paragraph of the will precludes application of the general rule that the personal representatives of a deceased beneficiary are entitled to the beneficiary's share of income remaining undistributed at the date of the beneficiary's death.

The tenth paragraph requires the trustees to divide

the income of the estate "at stated intervals of not more than six months." The word "stated" means "determined, fixed, or settled." *In re McKeon's Estate,* 227 Iowa 1050, 289 N.W. 915, 919.[6] The term "at stated intervals" is the equivalent of "at stated times" and in respect to the latter phrase it is stated in *Zangerle* v. *State, ex rel. Walther,* 115 Ohio St. 168, 152 N.E. 658, 659: "The Constitution requires this compensation to be paid at 'stated times,' not at occasional times, or at times dependent upon the approval of any other official. Lexicographers all agree upon the definition of 'stated times.' The Century says: 'Occurring at regular intervals,' or 'given regularly.' The New English Dictionary defines it thus: 'Fixed, regular in operation or occurrence, not occasional or fluctuating.' " The language of paragraph ten under consideration clearly mandates the trustees to establish fixed periodic dates for the distribution of income to the beneficiaries. Their discretion extends, subject to the six months limitation, only to determining the interval between payment dates. The will contemplates that each division for distribution should be of the then existing net income of the trust.

We are of the opinion that the trustees have sufficiently complied with the testator's mandate by fixing the division intervals on a monthly basis, even though the monthly payments to beneficiaries are only approximated. As has been stated, under the terms of the will the beneficiaries are entitled to periodic distribution of the entire net income of the estate, but it is obvious that if each periodic payment were actually to be made on that basis there would of necessity be a considerable lag between any distribution date and payment and that there could be considerable fluctuation in the monthly payment dates.

---

[6] Webster's Third International New Dictionary gives the primary definition of "stated" as "set or fixed (as by rule or custom); established, regular."

The schedule of payments presently in operation provides for certainty as to time of payment. Monthly payments are substantial. Payment of the balance of net income due for each year is made immediately after the annual account is rendered. The payment arrangement adopted by the trustees is a practical one and is fully justified by the size and complexities of the estate.

Under the payment schedule presently in effect we see the construction problem before us to be the same as if the will expressly provided that the income should be divided among the beneficiaries monthly.

The further requirement of paragraph ten is that the periodic division of net income shall be into as many equal parts "as there shall be then in esse any of my children by my said wife, and shall be by said Trustees paid to my said children, from and after their respective majority or marriage, share and share alike; Provided, that if any of my said children shall decease, leaving lawful issue, such issue shall stand in the place or places of his, her, or their parent or parents in all respects concerning the division, payment and receipt of the fund herein mentioned." It is contended that by the use of the words "be then in esse" the testator has signified that the beneficiaries must be alive in order to establish a right to undistributed income of the estate. We do not agree.

Our view is that the testator intended, by the provisions under consideration, to establish the quantitative standard for division of the income of the estate on the periodic division dates and that he did not thereby mean to qualify or condition the beneficiary's right to undistributed income. As we analyze these provisions of the will, the testator has in effect said that during the continuance of the trust the income should be divided on each division date into as many equal primary parts as there shall then be in esse children and issue of any deceased child, with

a deceased child's issue being counted in the primary division by way of substitution and as a single unit. In other words, that the periodic division of income should be into as many equal primary parts as there then were branches of the testator's family, to provide the ordinary basis for a per stirpes distribution. There is no provision in paragraph ten spelling out what should happen in the situation presented by the case at hand. Reading the will as a whole we conclude that the provisions of paragraph ten, relied on by the successor beneficiary, do not deter resort to the assumption referred to in the above quotation from 141 A.L.R.

To give to the provisions of paragraph ten the import urged by the successor beneficiary would mean that a child or grandchild of James Campbell would be deprived of the right to rely on the trust estate's providing for or contributing to his or her maintenance for some period, impossible for him or her to estimate, after the last distribution date before his or her death. And it is to be noted in this connection that under the terms of the will the period could be, or at least could have been, as long as six months less only a day.

As we have seen, the testator expressly stated in paragraph twelve of the will that his testamentary purpose was to provide "safe and certain income and maintenance" for his wife, children and grandchildren. In *Campbell Estate* v. *Campbell-Parker, supra,* 18 Haw. 34, it is stated at p. 40 that, "The desire to conserve the estate and provide *at all times* sufficient funds for the maintenance of the widow and children is clearly indicated all through the will." In view of this solicitude of the testator for his children and grandchildren, clearly discernible from the will as a whole, we are unable to impute to him any intent to curtail the right of his children and grandchildren, and other descendants in turn, to rely on the trust for their

maintenance for their full lives. Any dissonant implication from the use of the words "then in esse" in paragraph ten is, in our opinion, too faint to be considered as such a "contrary expression of intent" as to preclude application of the general rule calling for the payment of undistributed income to a deceased beneficiary's personal representatives. The authorities cited by the successor beneficiary do not persuade us that a different conclusion can or should be adopted. To make the point, we need consider only *Hemenway* v. *Hemenway, supra,* 171 Mass. 42, 50 N.E. 456, as it is the leading and by far the strongest case offered in support of the successor beneficiary's position that by reason of the inclusion of the words "then in esse" in paragraph ten, the will must be construed against the executors.

In the *Hemenway* case the court considered a testamentary trust for the benefit of the widow and three of the testator's children. The will provided that the fiduciary should pay the income of the trust in equal semiannual installments, "to such of said four persons as may be living at the time of payment, and to the living issue of any child who has then deceased." The semiannual payment dates were June 15 and December 15. The widow died on March 6, 1894. It was held that there could be no apportionment to the widow's executors of trust income received subsequent to the semiannual payment date preceding her death.

We do not disagree with the Massachusetts decision but, by reason of the obvious dissimilarity of the provisions before the Massachusetts court and those before us, we think the case is clearly distinguishable and that it affords no support for the point for which it is offered. Further, to the extent any similarity may be considered as existing between the language of the Hemenway will and that of James Campbell's, it is to be remembered, as stated

in, *In re Nicholson's Estate,* 355 Pa. 426, 50 A.2d 283, 284:
"That the *words* of the present will are nearly similar to
those employed in the cases cited is not absolutely con-
trolling. Every will, in a sense, is unique. Precedents are
of little value. The same words, or those nearly similar,
used under different circumstances and contexts, may
express different intentions."

What should be noted in connection with the *Hemen-
way* case is that it holds against the successor beneficiary's
contention that the personal representatives of Mrs.
Field's estate are not entitled to any payment whatsoever
from the Campbell trust. We have reference to the fact
that while the case holds that the personal representatives
of the deceased beneficiary did not have a right to an
apportionment of income accrued between the last distri-
bution date and the date of the beneficiary's death, it is
implicit in the opinion that they were entitled to receive
the beneficiary's share of any undistributed income that
had accrued prior to the last distribution date before her
death. This is clearly and directly brought out in a sub-
sequent Massachusetts case, *Thorndike* v. *Dexter,* 340
Mass. 387, 164 N.E.2d 338.

In the *Thorndike* case an article of the testator's will
provided that: "The net income of the trust fund shall
be paid quarterly, or oftener if convenient, to my daughters
living at the time of such payment and to the issue then
living of any daughter of mine then deceased * * *." The
testator died in 1956. One of his two daughters died on
May 31, 1958. Quarterly payments were fixed from August
26, 1956. By reason of litigation involving the estate no
income was paid out prior to the daughter's death. The
lower court held that the executors of the deceased daugh-
ter were entitled to one-half of the net income which had
accrued prior to May 31, 1958. On appeal it was held, in
view of the language quoted above, that the decree should

have applied to the income available for distribution on May 26, 1958, the last quarterly payment date before the income beneficiary's death, rather than on May 31, the date of her death. It is clear that even if the *Hemenway* case could be taken as supporting the position for which it was cited, the executors of Mrs. Field's estate would nevertheless be entitled to the balance of net income that was due her on March 31, 1961.

We answer the reserved question by holding that the executors of Mrs. Field's estate are entitled to the balance of the one-eighth share of net income that would have been payable to Mrs. Field if an accounting had been made to her as of the end of April 7, 1961.

The cause is remanded for further proceedings consistent herewith.

*Clinton R. Ashford* (*Stephenson, Ashford & Wriston* of counsel) (*Frank D. Padgett,* with *Robertson, Castle & Anthony* of counsel, on brief) for Trustees of the Estate of James Campbell, Deceased.

*A. Peter Howell* (*Hogan and Howell* of counsel) (*Wilford D. Godbold* on briefs) for Executors of the Estate of Kapiolani Campbell Field, Deceased.

*Richard K. Sharpless* (*Lewis, Buck & Saunders* of counsel) for Edward A. K. Kawananakoa.